## A03A2398. JOHNSON v. THE STATE.
### (595 SE2d 625)

JOHNSON, Presiding Judge.

Richard Johnson, Jr. was found guilty of two counts of armed robbery and two counts of obstruction of an officer, in connection with the armed theft of two vehicles. He appeals from his convictions, challenging the sufficiency of the evidence to support the armed robbery convictions, the court's denial of his motion to suppress evidence seized from his house pursuant to a search warrant, the court's refusal to try the two armed robbery counts separately, and the court's admission of a witness' out-of-court statement as a prior consistent statement. None of the challenges has merit, so we affirm his convictions.

1. Johnson contends the evidence was insufficient to support the conviction as to the first armed robbery because the evidence at best placed him in the stolen vehicle, and that only the testimony of his co-defendant placed him there. As to the second armed robbery, he says the evidence implicating him was based almost entirely on the testimony of an informant without any determination made as to the informant's veracity or motive. We find that the evidence was sufficient to support both convictions.

On appeal, we view the evidence in a light most favorable to the verdict, and an appellant no longer enjoys a presumption of innocence.[1] This court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*[2] and does not weigh the evidence or determine witness credibility.[3] Conflicts in the evidence are for the jury to resolve.[4]

Viewed in a light most favorable to the verdict, the evidence shows that on Friday, December 28, 2001, at about 6:00 p.m., the director of a child care center on Old Wesley Chapel Road in DeKalb County locked the facility and walked to her car, a Jeep Cherokee. A

[1] *Houston v. State*, 242 Ga. App. 300 (529 SE2d 431) (2000).
[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[3] *Houston*, supra.
[4] Id.

young man with a handgun suddenly confronted her and ordered her to get down on the ground and give him her keys. She tossed him her keys. He and a second man jumped into the car and left. Although the victim did not see a second man, the victim's employee, who was walking down a driveway, did. The victim called police, and she and the employee gave them a description of the men and the vehicle. Although the victim was unable to describe much of the assailant's clothing, she recalled that he wore a dark knit or thin "fitted" cap on his head. The descriptions were broadcast on police radio. About 15 to 30 minutes later, officers spotted the car on nearby Browns Mill Road. An officer activated his blue lights, and the driver turned the car onto a side street and stopped. The two occupants jumped out of the Jeep and fled on foot. One of the men was immediately apprehended. Officers drove the victim to the scene, where she identified Anthony Moreland as the gunman. Johnson was captured a few minutes later. Both men were taken into custody, but Johnson was released from a juvenile facility on bond.

Moreland, who pled guilty to the armed robbery, testified that on December 28, 2001, he and Johnson decided that they needed a car. Moreland suggested trying to get a car from a drug addict, but Johnson said he had a better idea and lifted his shirt to reveal a gun. The men went to the child care center and waited. According to Moreland, Johnson pointed the gun at the victim and ordered her to get on the ground. Johnson grabbed the car keys and the men drove away toward Moreland's home. When they saw a police car, they stopped the vehicle and fled on foot.

Regarding the second armed robbery, the evidence shows that on the evening of March 8, 2002, Deangelo Upshur was working as a cook at a fish restaurant on Wesley Chapel Road. During a break, Upshur walked to a gas station across the parking lot and noticed Johnson, whom he knew, standing in the restaurant parking lot. Johnson told Upshur "he was about to get him an Expedition or Explorer." When Upshur returned from the gas station, he went back into the restaurant. Moments later, as Upshur went outside to empty the trash, he saw that Johnson was still there. Johnson raised his shirt and showed Upshur a gun in his waistband. Johnson was wearing a red shirt, black pants, a blue bandanna on his neck, and a black "do-rag" on his head. Upshur went back inside the restaurant. About five minutes later, a woman came inside the restaurant and said a man had just stolen her Ford Explorer at gunpoint.

The victim testified that between 8:00 and 9:00 p.m., she parked her Explorer in the restaurant parking lot. As she got out of the car, a young man in a red shirt with a blue bandanna over his nose and mouth appeared next to her. He had a gun and demanded her car keys. She threw the keys to him and ran inside the restaurant.

After hearing that the robber wore a blue bandanna, Upshur asked the woman whether the robber was wearing black pants and a red shirt. She said he was. Upshur got into the patrol car and directed the police to Johnson's home. On the way, police spotted the victim's Explorer. Johnson was driving. Johnson sped away, but then stopped after a brief chase. Johnson and a second man, Deangelo Elder, fled on foot. Upshur knew Elder and recognized him because he walked with a limp. He told the officer Elder's name. Upshur recognized Johnson by his clothing.

Officers found a bandanna and a BB gun in the victim's car. Upshur identified the gun as the one he had seen in Johnson's waistband. The victim later identified the bandanna as that worn by her assailant. Police ran a background check on Elder and learned that he was considered a runaway, and that he ran away from home with Johnson.

Police went to Elder's home. His mother said he was out with Johnson. Police applied for and received an arrest warrant for Johnson. They went to Johnson's home and arrested him for armed robbery. They then asked Johnson's mother for consent to search Johnson's room. His mother would not consent, so officers prepared an affidavit and presented it to a magistrate, who issued a search warrant for the residence. In executing the warrant, officers found Elder in Johnson's locked bedroom, and the victim's car keys between Johnson's mattress and box spring. A red shirt like the one described by Upshur and the victim was found in an adjacent laundry room.

At trial, Johnson called his sister as a witness. She testified that the red shirt officers found was hers, and that Johnson was at home with her watching an encore presentation of the Bernie Mac Show on television at the time the crime was committed. In rebuttal, the state called as a witness a programming executive for Fox 5/WAGA Atlanta television — the local station which broadcasts the Bernie Mac Show. The executive testified that the Bernie Mac Show was not broadcast on March 8, 2002, on WAGA, and that it could not have aired on any other station that evening.

The evidence was sufficient for a rational trier of fact to conclude that Johnson was guilty beyond a reasonable doubt of committing the armed robberies.[5]

2. Johnson contends the trial court erred in denying his motion to suppress evidence found in his home pursuant to the search warrant. According to Johnson, the affidavit submitted in support of the warrant application contained no indicia of reliability as it related to the hearsay statements of Upshur who was an unreliable, unknown

---

[5] See *Nealy v. State*, 239 Ga. App. 651, 654-655 (5) (522 SE2d 34) (1999).

informant. The trial court did not err in denying the motion to suppress.

A defendant may seek to suppress evidence seized during a search with a warrant if the warrant was not supported by probable cause.[6] In determining whether an affidavit establishes the probable cause necessary for the warrant, the issuing judge must make a practical, common-sense decision whether, under all the circumstances set forth in the affidavit, there is a fair probability that contraband will be found in a particular place.[7] On appeal, we determine whether the judge had a substantial basis for concluding that probable cause existed.[8]

Whether an individual supplying information of a possible crime is a "concerned citizen" to whom a presumption of credibility is accorded or an "anonymous informant," the information provided by either may support the issuance of a warrant when that information is corroborated by further investigation by officers.[9] Such corroboration reduces the chances of a reckless or prevaricating tale.[10] Such an approach also comports with the deferential standard of review which is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.[11]

In the affidavit, the officer included information indicating that Upshur had seen someone matching the description given of the suspect by the victim minutes earlier in the parking lot of the restaurant where he worked and where the robbery occurred, that the suspect's name was Richard, that Richard had just told Upshur that he was about to get an Explorer, that Richard lifted his shirt and showed Upshur a gun, that the victim was robbed at gunpoint, that Upshur described the same clothing as the victim, that while en route to Johnson's house they saw the stolen Explorer, and that two men fled from the vehicle when police approached. Because Upshur's information was corroborated, and given the mandate that doubtful cases should be resolved in favor of upholding search warrants, we cannot say that the trial court erred in concluding the affidavit provided sufficient probable cause for issuing the warrant.[12]

Contrary to Johnson's argument, the affidavit was not rendered insufficient because it was based on double hearsay provided by Upshur to one officer, who then relayed the information to the officer

---

[6] *Lyons v. State*, 258 Ga. App. 9, 10 (1) (572 SE2d 632) (2002).
[7] Id.
[8] Id.
[9] *State v. Towe*, 246 Ga. App. 808, 811 (1) (541 SE2d 423) (2000).
[10] Id.
[11] Id.
[12] See generally *Dearing v. State*, 233 Ga. App. 630, 633 (505 SE2d 485) (1998).

who presented the affidavit.[13] The rule in Georgia has been that an affidavit supporting a search warrant may be based on hearsay information as long as there is a substantial basis for crediting the hearsay.[14] An officer may rely on information communicated by fellow officers for probable cause.[15] Because the other officer and Upshur were not required to personally appear before the magistrate, this enumeration is without merit.

3. Johnson complains that the trial court erred in denying his motion to sever the trial of the two armed robbery charges, urging he was denied a fair trial by the state's jointly trying the robberies which occurred months apart and were dissimilar in terms of whether the robber acted alone and whether he wore a bandanna during the commission of the crimes.

Where two or more offenses are joined only because they are of the same or similar character, the trial court, upon motion of the defendant, must order separate trials for each of the offenses.[16] But when they are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan, the court has discretion to decide whether to sever the offenses.[17] When the similarity of the crimes reaches the level of a pattern, severance of the crimes is not required.[18] And where the evidence of one crime would be admissible in the trial of the other crime, it cannot be said that the trial court abused its discretion in denying the motion for severance.[19]

Here, the robberies were so similar that they evinced a definite pattern. The crimes were committed in the same neighborhood on Friday evenings. In both cases, the robber showed his gun to a male friend or acquaintance and announced his intention to get a car, just moments before the crimes were committed. Both crimes were accomplished by a man wearing a fitted cap or "do-rag," brandishing a handgun, surprising lone women as they got into or out of a sport utility vehicle, and demanding car keys. In each case, a second man was involved within moments of the crime being committed, the robber was seen driving the stolen car not far from the crime scene, and the two suspects attempted to flee from police on foot. Moreover, evidence of one of the robberies would be admissible in the trial of the

---

[13] See *Jones v. State*, 255 Ga. App. 540, 541 (566 SE2d 1) (2002).

[14] *Williams v. State*, 239 Ga. App. 671, 672 (522 SE2d 43) (1999).

[15] Id.

[16] *Morrow v. State*, 226 Ga. App. 833, 834 (1) (487 SE2d 669) (1997).

[17] Id.; *Mangrum v. State*, 244 Ga. App. 559 (536 SE2d 217) (2000).

[18] See *Priester v. State*, 249 Ga. App. 594, 597 (2) (549 SE2d 429) (2001).

[19] *Morrow*, supra at 834 (1).

other robbery. The trial court did not abuse its discretion in denying Johnson's motion for a severance.[20]

4. Johnson complains that the trial court erred in overruling his objection to one officer's testimony regarding what Upshur told another officer. Johnson argues this was double hearsay and served to bolster Upshur's testimony. The trial court did not abuse its discretion in allowing the testimony.

Admission of a prior consistent statement is permitted where the veracity of a witness' trial testimony has been placed in issue, the witness is present at trial, and the witness is available for cross-examination.[21] Upshur's veracity was placed in issue because, as he admitted on cross-examination, he and Johnson did not always get along. In fact, Upshur said they fought in the past and "continued to have arguments and fights." Defense counsel asked Upshur, "Now you're going to get him back; right?" Inasmuch as Upshur testified at trial, his credibility was at issue, and he was subject to cross-examination, his statement was admissible as a prior consistent statement.[22] There was no error.

*Judgment affirmed. Eldridge and Mikell, JJ., concur.*

DECIDED FEBRUARY 23, 2004.

*September Guy*, for appellant.

*J. Tom Morgan, District Attorney, Robert M. Coker, Assistant District Attorney*, for appellee.

[20] See *Priester*, supra.
[21] *Geiger v. State*, 258 Ga. App. 57, 64 (4) (573 SE2d 85) (2002).
[22] See id.; *Shamsuddeen v. State*, 255 Ga. App. 326, 327 (1) (565 SE2d 544) (2002).