## A10A1244. GLASS v. THE STATE.

(696 SE2d 140)

ELLINGTON, Judge.

A Carroll County jury found Ramar Glass guilty beyond a reasonable doubt of trafficking in cocaine, OCGA § 16-13-31 (a) (1) (A); and possession of marijuana with intent to distribute, OCGA § 16-13-30 (j). Following the denial of his motion for a new trial, Glass appeals, contending the trial court erred in denying his motion to suppress evidence seized pursuant to a search warrant, in denying his motion to suppress pretrial statements that he gave before being advised of his constitutional rights, and in denying his motion for a directed verdict. For the reasons explained below, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows the following.[2] On March 13, 2005, Glass checked into the Quality Inn & Suites Hotel located at 160 Centennial Road, Carrollton. Glass asked for a suite and was assigned Room 248, a suite that the hotel had previously created by combining Room 248 and the adjoining room, Room 250. Monet Raphael was noted as an additional guest in the suite. On the evening of March 14, other guests complained about there being too many people in Room 248.

On March 15, 2005, a man called the front desk from Room 248, asked for housekeeping service and agreed to leave the suite while it was being cleaned. The housekeeper who responded discovered a large quantity of what appeared to be illegal drugs in the suite. The housekeeper reported what she had found, and the head of housekeeping went to the suite to confirm the discovery. The head of housekeeping saw a grass-like material that appeared to be marijuana in open bags sitting on top of the television and desk. In an open desk drawer, she saw small plastic bags that contained what looked like broken pieces of cloudy glass. She reported this to the front desk manager, who called the Carrollton police.

Officers who responded to the call learned the names of the occupants from the front desk manager. An investigator interviewed the head of housekeeping about what she had seen in Room 248. Based on this information, the supervising investigator secured a

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 318-319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

[2] This recitation of facts is based in part on the evidence which Glass contends the trial court erroneously admitted. We have rejected Glass's evidentiary challenges for the reasons discussed in Divisions 1 and 2, infra.

search warrant for Room 248. While the officers on the scene were awaiting the search warrant, Glass arrived at the hotel by car and walked toward the suite. When Glass saw a uniformed officer near Room 248, he stopped with a startled expression, abruptly turned around, and started walking back to his car. A hotel employee told an officer that Glass was one of the occupants of the suite.

The investigator stopped Glass and asked his name and where he was going. Glass gave his name and stated that he was going to Room 248. The investigator asked for Glass's consent to search him, and Glass agreed. Glass had a room key to Room 248 in his pocket. The investigator told Glass that he was not under arrest but that the investigator was going to detain him for investigational purposes. As the officers continued to wait for the search warrant to arrive, the investigator placed Glass, who seemed very nervous, in handcuffs, telling him it was for officer safety and reiterating that he was not under arrest.

When the supervising investigator arrived with the search warrant, the officers entered the suite and immediately noticed that the smell of green marijuana was filling the suite. From the part of the suite that had originally been Room 248, they seized two bags of marijuana that were on the desk and two bags of solid cocaine that were sitting in an open drawer. In the part of the suite that had originally been Room 250, they found a trash bag full of marijuana in the closet and a bag that contained marijuana, powder cocaine, solid cocaine, and ecstacy tablets, as well as marijuana seeds and stems lying beside a video game, plastic baggies, and a digital scale.

After the execution of the search warrant, the supervising investigator asked Glass if there was anything in the suite that belonged to him. Glass pointed out items that belonged to him, including clothing, a video game system, and a video game. At Glass's request, two officers gathered those items and secured them in Glass's car. Glass was then arrested.

1. Glass contends that the trial court erred in denying his motion to suppress the evidence that was seized in the execution of the search warrant for two reasons.

(a) First, Glass contends that the attesting officer failed to give the magistrate any information regarding the informant's veracity, truthfulness, reputation, and reliability and, therefore, that the search warrant was invalid.

> A search warrant will only issue upon facts sufficient to show probable cause that a crime is being committed or has been committed. OCGA § 17-5-21 (a). The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense deci-

sion whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The trial court may then examine the issue as a first level of review, guided by the Fourth Amendment's strong preference for searches conducted pursuant to a warrant, and the principle that substantial deference must be accorded a magistrate's decision to issue a search warrant based on a finding of probable cause. A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. Our appellate courts will review the search warrant to determine the existence of probable cause using the totality of the circumstances analysis set forth in *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983).

(Citations and punctuation omitted.) *State v. Palmer*, 285 Ga. 75, 77-78 (673 SE2d 237) (2009). "[T]he trial court's application of the law to undisputed facts is subject to de novo review[.]" (Citation and punctuation omitted.) Id. at 78.

In this case, the magistrate issued a search warrant for Glass's hotel room based on an affidavit that showed that a detective interviewed a member of the hotel's housekeeping staff who had seen the drugs in Room 248. Further, the affidavit showed that the witness, who was identified by name in the affidavit, reported that a guest in Room 248 requested that the suite be cleaned while the guests went to get something to eat and that, immediately upon entering the suite, she observed a large quantity of what appeared to be marijuana and other drugs lying openly on the desk and television. Although the affidavit in this case did not state specific facts to demonstrate the veracity of the witness, "the absence of significant information regarding reliability is not necessarily fatal to an affidavit" offered in support of an application for a search warrant. (Citation and punctuation omitted.) *Chambliss v. State*, 298 Ga. App. 293, 296 (1) (679 SE2d 831) (2009). Further, a concerned citizen informant has "preferred status" insofar as testing the credibility of the informant's information. *Whitten v. State*, 174 Ga. App. 867, 868 (1) (331 SE2d 912) (1985).

Under the totality of the circumstances presented here, including the likelihood that the housekeeper risked loss of employment and criminal prosecution if her report was false, the magistrate was authorized to make a pragmatic, common-sense judgment that there was a fair probability that a search of the suite would produce evidence that the suite's occupants were in possession of drugs. The trial court therefore did not err in denying Glass's motion to suppress. *Chambliss v. State*, 298 Ga. App. at 296 (1).

(b) Second, Glass contends the warrant, which described the premises to be searched as "room . . . #248" in the hotel, did not authorize officers to search the connecting room, Room 250, where some of the drugs were located.

A premises description is sufficient if on its face it enables a prudent officer executing the warrant to locate the person and place definitely and with reasonable certainty. . . . [T]he warrant should not leave the place to be searched to the discretion of the officer. And, where the name of the owner or the occupant is not given, the description of the premises must be exact.

(Citations and punctuation omitted.) *State v. Sanders*, 155 Ga. App. 274, 275 (270 SE2d 850) (1980).

In this case, the affidavit supporting the warrant recited probable cause to believe drugs would be found on the premises under Glass's possession, custody, and control, namely the two-room suite that Quality Inn designated, and rented to Glass, as Room 248. *State v. Sanders*, 155 Ga. App. at 275.

2. Glass contends that he was in custody, but had not received notice of his *Miranda*[3] rights, when officers asked whether he owned anything in the hotel room, and, therefore, that the trial court erred in denying his motion to suppress his statement that he owned clothes and a video game set located there. In response, the State contends, inter alia, that Glass was not in custody when he was questioned and made the statement.

The record shows that Glass filed a written motion to suppress "certain statements" he gave in response to police questioning while he was in custody "during the pend[e]ncy of the issuance of the . . . search warrant." At the hearing on his motion, the prosecutor asked Glass's counsel to identify what statements he was seeking to suppress. Glass's counsel responded, "[t]hat would be any statements that were made by Mr. Glass in response to any questions or

---

[3] See *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

prompting made by the state agent after Mr. Glass identified himself and what room he was walking towards, at which point he was in custody because they were already getting a search warrant for him and the room[.]" During the hearing, neither investigator mentioned asking Glass about whether he had any personal property in the suite. The trial court concluded that there was nothing incriminating in Glass's statements "except that he rented the room," which was conclusively established by other evidence, and, accordingly, denied the motion.

During the trial testimony of one of those witnesses, the lead investigator, the prosecution asked whether any of Glass's personal property had been found in Room 248. The investigator volunteered at that point that the supervising investigator asked Glass whether anything in the suite belonged to him that he would like secured and that, in response, Glass identified the clothes, video game system, and video game. Glass's counsel did not make any objection or motion in regard to that testimony. We conclude from the record that the investigator's testimony about Glass's statement that some clothes and other personal items in the suite belonged to him came as a surprise to the prosecutor, Glass's counsel, and the trial court. Because Glass did not object to the question, did not move to strike the response, and, in subsequently moving for directed verdict of acquittal, did not address the issue of voluntariness of the statement, the trial court did not have an opportunity to consider and resolve the issues of whether Glass was in custody when the supervising investigator asked the question and whether Glass's response was voluntary.[4] Under these circumstances, Glass waived any objection to the admission of his incriminating statement. *Cooper v. State*, 174 Ga. App. 464, 466 (2) (330 SE2d 402) (1985) ("Absent a proper objection and any evidence that the appellant's statement was involuntary, the admission of the statement [is] not error.") (citations omitted).

3. Glass contends that, given the evidence that other people had access to the hotel room and the lack of any direct evidence that he had ever been inside the suite, the evidence was insufficient to support his convictions.

> A person who, though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing is then in con-

---

[4] OCGA § 24-3-50 (An inculpatory custodial statement is admissible only if it was made "voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury."). See *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

structive possession of it. To prove constructive possession, the State must establish a link between the defendant and the contraband that goes beyond mere spatial proximity. . . . Possession can be proven by circumstantial as well as direct evidence. All of the competent evidence adduced at trial may be considered to show the defendant's constructive or joint possession. Whether the circumstantial evidence is sufficient to exclude every reasonable hypothesis save that of defendant's guilt is a question for the jury unless the verdict is insupportable as a matter of law.

(Citations and punctuation omitted.) *Truitt v. State*, 266 Ga. App. 56, 58-59 (2) (596 SE2d 219) (2004). See also OCGA § 24-4-6.

In this case, in addition to evidence that Glass rented Room 248, had a key to the suite, and was going to the suite at a time when a great quantity and variety of drugs were in open view, there was other evidence linking him to the contraband found there, including his suspicious behavior upon seeing officers near the suite and the presence of his personal property inside the suite. We conclude that the verdict is not insupportable as a matter of law. *Truitt v. State*, 266 Ga. App. at 59.

*Judgment affirmed. Andrews, P. J., and Doyle, J., concur.*

DECIDED JUNE 11, 2010.

*John W. Howe*, for appellant.
*Peter J. Skandalakis, District Attorney, Vincent J. Faucette, Assistant District Attorney*, for appellee.