**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**January 25, 2013**

# In the Court of Appeals of Georgia

A12A2223. SUTTON v. THE STATE.                    JE-085C

ELLINGTON, Chief Judge.

Eric Sutton appeals from the denial of his motion to suppress evidence seized pursuant to a search warrant executed at his home.[1] He contends that the trial court erred in denying the motion based upon a finding that the affidavit accompanying the search warrant application was legally sufficient to establish probable cause. As explained below, we agree and reverse.

Under OCGA § 17-5-30 (a) (2), a defendant may move the court to suppress seized evidence on the grounds that "[t]he search and seizure with a warrant was illegal because the warrant is insufficient on its face, there was not probable cause for

---

[1] This Court granted Sutton's application for interlocutory appeal, Case No. A12I0154.

the issuance of the warrant, or the warrant was illegally executed." Further, under

OCGA § 17-5-30 (b), "the burden of proving that the search and seizure were lawful

shall be on the [S]tate." See also *Dearing v. State*, 233 Ga. App. 630, 632 (505 SE2d

485) (1998) (In response to a motion to suppress evidence seized pursuant to a search

warrant, the State has the burden of proving that an informant who provided

information to the affiant applying for the search warrant was reliable.).

> The sufficiency of information obtained from an informant is not to be
> judged by any rigid test. Generally, probable cause is determined by the
> totality of the circumstances surrounding (1) the basis of the informant's
> knowledge and (2) the informant's veracity or reliability. A deficiency
> in one may be compensated for, in determining the overall reliability of
> a tip, by a strong showing as to the other, or by some other indicia of
> reliability.

(Citation and punctuation omitted.) *Bryant v. State*, 288 Ga. 876, 893 (13) (a) (708

SE2d 362) (2011). Further, where "other investigation supports the information of the

informant, this can be considered as a part of the reliable basis for the finding of

probable cause." (Citation and punctuation omitted.) *State v. Davis*, 217 Ga. App.

225, 227 (457 SE2d 194) (1995).

> In determining the sufficiency of a search warrant affidavit, the issuing
> magistrate or judge must make a practical, common sense decision

whether, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Our duty as a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In reviewing the lower court's decision, we give great deference to the magistrate's determination of probable cause; a presumption of validity attaches to an affidavit supporting a search warrant, and doubtful cases are resolved in favor of upholding the search warrant. The contents of the affidavit are reviewed in the light most favorable to upholding the trial court's determination.

(Footnotes omitted.) *Price v. State*, 297 Ga. App. 501, 501-502 (677 SE2d 683) (2009).

While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citations omitted.) *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

So viewed, the record shows the following facts.

3

In November or December 2010, an informant contacted an officer of the Flowery Branch Police Department with allegations that the defendant was using and selling illegal drugs. The informant, identified by the officer as "It," had received such information from a person with whom It had a "personal relationship." According to It, that person, identified in the affidavit as "Source A," had a personal relationship with the defendant. However, It had no direct relationship with the defendant, nor had he or she ever personally observed the defendant using or selling drugs. The only information It provided to the officer was what Source A had told him or her. Notably, although Source A reported to It that he or she had seen the defendant *use* drugs he or she believed to be marijuana, Source A did not report that he or she had ever seen the defendant *sell* any drugs.

Other than confirming It's statements that the defendant lived at a certain address, drove a certain type of truck, and once owned a certain business, the officer did not conduct an investigation to confirm or corroborate It's statements about the defendant, such as performing surveillance of the defendant's home or conducting a controlled purchase of drugs. Instead, based solely upon It's hearsay statements, the officer executed an affidavit and applied for a search warrant for the defendant's home.

4

The complete statement in the officer's affidavit that accompanied the search warrant application is as follows:[2]

On or between the dates of November 22, 2010 and December 01, 2010, [the officer], a sworn and certified police officer employed for the past 4 and ½ years with the City of Flowery Branch, GA and herein after referred to as "your affiant," was contacted by a source of information whom your affiant will herein after refer to as "It."

During the course of the contact, "It" stated to affiant that, on or between the afore mentioned dates, it had the opportunity to engage in an unsolicited conversation with a third party, herein after referred to as "[S]ource A," regarding Eric Sutton of 1519 Treepark Apartments in Flowery Branch, GA. More specifically, the conversation focused on [S]ource A's concern that Eric Sutton was, during the above mentioned dates, actively engaged in the use, storage, and distribution of marijuana. Source A is not personally experienced with marijuana and characterizes the substance based upon representation by Sutton and manner of usage by Eric Sutton.

Source A's concern was expressed to "It" from the point of view of genuine concern for Sutton's health and personal welfare. Source A stated to "It" that Sutton had lost approx. 40 pounds of weight over the past year and that he has displayed an increasing verbal abusive

_____

[2] With the exception of a few immaterial punctuation changes, the statement has not been edited other than as shown by brackets.

demeanor, has become short tempered and has displayed increasing physical aggression toward others. Source A stated to "It" that Source A is additionally concerned for the safety of the general public and the law enforcement community due to the level of controlled substance abuse by Sutton. Source A is more specifically concerned because Sutton possesses numerous firearms and Source A is fearful that Sutton is likely to use those firearms against law enforcement or an innocent member of the community while experiencing drug induced paranoia.

What Source A related to "It" is considered by your affiant to be truthful, reliable and credible because Source A has a personal relationship with Sutton. As a result of the personal relationship, Source A has had the opportunity, in the past, to make such observations of Sutton as well as to have personally observed the facts and circumstances related. Source A had no apparent motivation to falsify the information related to "It" and because Source A had no reason to believe the facts and circumstances would ever be repeated to law enforcement. Additionally, Source A and "It" have a personal relationship. During the time of the personal relationship, "It" has never known Source A to have lied to "It."

What "It" related to affiant is considered by your affiant to be truthful, reliable, and credible because affiant is unable to detect any motivation by "It" to falsify the information related to your affiant. Additionally, affiant has learned that "it" is a mature person firmly established and with significant connections in "It's" community. "It" is gainfully employed with no known criminal record. Similar to Source A, "It" felt

6

compelled to forward the information to law enforcement regarding Sutton because of a genuine concern for the health and best welfare of Eric Sutton as well as out of concern for the general public and the law enforcement community. Other descriptors indicative of reliability and credibility can be provided by your affiant in the form of oral testimony. Your affiant is reluctant to do so in writing at this time because of the level of fear of Sutton's retaliation should information appear that leads Sutton to the identity of either Source A or "It."

Last, "It" provided affiant with the residential address of Eric Sutton, a description of the vehicle he most typically operates, and that he use to own a Company known as TAB Inc.

Affiant checked Georgia Crime Information Center (GCIC) information on Nov. 30, 2010, regarding Sutton's driver's license and found Eric Sutton to be registered as a licensed driver in the State of Georgia with a residential address of 1519 Treepark Circle, Treepark Apartments, Flowery Branch, GA 30542. On November 30, 2010 affiant traveled to the 1500 building of Treepark Apartments and did personally observe the black pickup truck with a lift kit bearing the GA tag TABINC, as described by "It," parked in the handicap parking space in the front of the building number 1500. Affiant checked GCIC information regarding the tag displayed on the truck and found the tag to be registered to Eric Sutton of 1519 Treepark Circle, Treepark Apartments, Flowery Branch, GA 30542. Additionally, the tag was shown to be registered on a black 2007 GMC Sierra K1500. Affiant checked public records regarding Sutton's former business and learned that Sutton was listed as the former

owner of a business located on McEver Rd. in Oakwood, GA identified as TAB Merchandising, Inc.

Affiant's training and experience [have] shown that persons involved in the possession, usage, and distribution of marijuana frequently keep and maintain weighing devices as well as packaging materials. These weighing devices and packaging materials are used to insure the receipt of the correct amount of contraband purchased or sold and are used to store the contraband substance as well as to maintain freshness. These items of property are considered to be tools integral within the trade of such contraband substances.

Based upon all of the foregoing facts and circumstances, affiant believes this affidavit is so that a search warrant may be issued.

The officer presented no other evidence to the Magistrate Court of Hall County before the magistrate issued the search warrant. After the officer executed the warrant, the defendant was arrested and charged with, inter alia, possession of marijuana and alprazolam with intent to distribute.

The defendant filed a motion to suppress evidence seized pursuant to the warrant.[3] The trial court denied the motion, finding that the affidavit "provided

[3] By agreement of the parties, the trial court did not conduct a hearing on the motion to suppress. However, the transcript of the commitment hearing in the magistrate court is included in the record.

8

sufficient information to enable the magistrate to determine that 'It' was a 'concerned citizen.'"[4] The court also concluded that, "[b]ased on the facts stated by Source A to It and recited in the Affidavit," the magistrate court was authorized to find that there was probable cause to search Sutton's home. This appeal followed.

1. Sutton contends that the trial court erred in denying his motion to suppress based upon its finding that, in the officer's affidavit supporting his request for a search warrant, It was a "concerned citizen." Sutton argues that there was no evidence to support that finding or to show that It was otherwise reliable.

> An informant's veracity, reliability, and basis of knowledge are highly relevant in determining the value of his report and[,] while these elements are not entirely separate and independent elements to be rigidly exacted in every case, they are closely intertwined issues that may usefully illuminate the common-sense, practical question whether there is probable cause to believe that contraband or evidence is located in a particular place.

(Citations and punctuation omitted.) *Eaton v. State*, 210 Ga. App. 273, 274 (1) (435 SE2d 756) (1993).

---

[4] The trial court noted that it was unnecessary under the circumstances and the applicable authority for it to decide whether "Source A" was also a "concerned citizen."

[T]here is a sufficient showing of credibility and thus probability of truthfulness when the affiant can state to the magistrate that his investigation shows that the informant is indeed a law-abiding citizen or the informant is personally known to the affiant to be a law-abiding citizen. To hold otherwise would be to exclude the word of all reputable, law-abiding eyewitness informants simply because they are unknown to the police, or have no reputation other than a good one.

*Miller v. State*, 155 Ga. App. 399, 400 (1) (A) (270 SE2d 822) (1980). This type of "concerned citizen," who anonymously provides information to police, is "afforded a preferred status insofar as testing the credibility of his information." (Citation and punctuation omitted.) *Dearing v. State*, 233 Ga. App. at 631. "However, before an anonymous tipster can be elevated to the status of concerned citizen, thereby gaining entitlement to the preferred status regarding credibility concomitant with that title, there must be placed before the magistrate facts from which it can be concluded that the anonymous tipster is, in fact, a concerned citizen." (Citation and punctuation omitted.) *Davis v. State*, 214 Ga. App. 36, 37 (447 SE2d 68) (1994).

(a) As an initial matter, although the State contends that it is *undisputed* that It and Source A were concerned citizens because the defendant failed to present any evidence to show that either person was unreliable, this argument ignores the fact that *the defendant does not know the identity of either person* and, thus, was unable to

10

directly challenge their reliability. Instead, the defendant can only assert that the facts provided to the magistrate in the affidavit were legally insufficient to demonstrate the unidentified sources' reliability, which is precisely what Sutton is doing in this case.

(b) Turning to the trial court's finding that It was a reliable source of information because he or she was a concerned citizen, the search warrant affidavit states as follows:

> What "It" related to affiant is considered by your affiant to be truthful, reliable, and credible because affiant is unable to detect any motivation by "It" to falsify the information related to your affiant. Additionally, affiant has learned that "It" is a mature person firmly established and with significant connections in "It's" community. "It" is gainfully employed with no known criminal record. . . . "[I]t" felt compelled to forward the information to law enforcement regarding Sutton because of a genuine concern for the health and best welfare of Eric Sutton[,] as well as out of concern for the general public and the law enforcement community.

While making broad, conclusory statements regarding It's credibility and motivations, however, the affidavit does not say whether It provided the information to the officer over the phone or in person;[5] whether the officer confirmed that It was, in fact, the

---

[5] See *Harper v. State*, 283 Ga. 102, 105-106 (2) (657 SE2d 213) (2008); *Davis v. State*, 214 Ga. App. at 37 (The affiant did not actually speak to the informant, and

11

person he or she claimed to be;[6] whether the officer's conclusions that It was "mature" and employed with no criminal record and no motivation to lie about the defendant was based upon his independent confirmation of those facts or whether he simply relied on It's statements to him;[7] or whether It had previously provided reliable information to the officer or other officers regarding criminal activity by other individuals.[8]

---

the GBI agent who relayed the information to the affiant had never before received information from the informant. The affidavit does not indicate how the informant contacted the agent or whether the agent even observed the informant in person.).

[6] See *Harper v. State*, 283 Ga. at 105-106 (2); *Eaton v. State*, 210 Ga. App. at 275 (1) (Although the officer described the informant in his affidavit as a "concerned citizen," the officer later admitted that he did not know the identity of the informant.).

[7] See *Eaton v. State*, 210 Ga. App. at 275 (1) (The affiant admitted on cross-examination at the motion to suppress hearing that the only basis for his characterization of the informant as a concerned citizen was "what the informant himself told the officer on the phone.").

[8] See *Davis v. State*, 214 Ga. App. at 37; cf. *Bryant v. State*, 288 Ga. at 893 (13) (a) (According to the affiant, "the informant had provided other information involving Bryant's case that he had confirmed as truthful. . . . [As the affiant] was the lead investigator on Bryant's case, this is some indication of the informant's reliability[.]").

Sutton argues that, given these factual omissions, the cases that the trial court and the State have cited in support of a finding that It was a concerned citizen are clearly distinguishable from the instant case. We agree.

For example, in *Manzione v. State*, 312 Ga. App. 638, 638-641 (719 SE2d 533) (2011), and *James v. State*, 312 Ga. App. 130, 133-134 (a) (717 SE2d 713) (2011), the informants were employees of internet service providers who reported information concerning the distribution of child pornography *pursuant to their statutory duty to do* so,[9] and the service provider identified the specific internet address from which the images originated.[10] In *Glass v. State*, 304 Ga. App. 414, 414-417 (1) (a) (696 SE2d 140) (2010), the informant, a housekeeper for a hotel, had entered a hotel room and *observed a large quantity of marijuana and other drugs in plain sight* on the desk and television. The housekeeper immediately reported her observation to her supervisor,

---

[9] See former 42 USC § 13032 (since repealed and recodified as 18 USC § 2258A).

[10] In *Manzione*, this Court concluded that, "when a corporate provider of web-based services . . . makes a report of criminal activity pursuant to its statutory reporting obligation set forth in 42 U.S.C. § 13032 (b) (1), it is the equivalent of one made from a law-abiding concerned citizen, and therefore is afforded a preferred status insofar as testing the credibility of the information." (Punctuation and footnote omitted.) *Manzione v. State*, 312 Ga. App. at 641.

13

who notified the police. Id. The officer who completed the warrant affidavit *interviewed the housekeeper in person* and *identified her by name in the affidavit.* Id.

Further, in *Price v. State*, 297 Ga. App. at 502-504, the officer who obtained the search warrant *actually met* with an informant who was a medical professional with training in drug recognition, who had *personally observed* illegal drugs in the defendant's house, and who had seen the defendant selling drugs. Id. In addition, before applying for the warrant, the officer had investigated the defendant's alleged drug trafficking for *two months*, had *met with two other confidential informants* who corroborated the other information, and had spoken to several individuals who had observed unusual amounts of traffic that would come and go from the defendant's home for short periods of time. Id. And, according to the affidavit in *Dearing v. State*, 233 Ga. App. at 631-632, the concerned citizen had *personally observed* a quantity of white powder represented by the defendant and another suspect to be amphetamine. Finally, in *State v. Davis*, 217 Ga. App. at 226, the informant knew the defendant, knew that the defendant sold marijuana from his home, and *had been in the defendant's house within the previous week and observed 30 to 35 marijuana plants growing*. Id. In addition, the officer who applied for the search warrant had received *corroborating information from another police officer*. Id.

In contrast, the facts of the instant case are comparable to those in the following cases, wherein either this Court or the Supreme Court of Georgia found that the State *failed* to show that the informant was a concerned citizen. In *Harper v. State*, 283 Ga. at 105-106 (2), a police officer told another officer, the affiant, that he had received a call from an anonymous third party who reported that his relative, the defendant, had admitted to committing a crime. Id. In his search warrant affidavit, the affiant referred to the third party informant as a "concerned citizen." Id. at 105 (2). According to the Supreme Court,

> [t]he defect in the affidavit is that it presents the third party informant as being a family member, a truthful person, and someone without a motive to lie *when the person who spoke to the informant had absolutely no way of knowing to whom he was speaking.* In this case, unlike other cases where an anonymous tipster's information has been corroborated, the information contained in the affidavit failed to provide any reason under the totality of the circumstances known to officers to believe that the information was from a credible source.

(Citations omitted; emphasis supplied.) Id. at 105-106 (2). Thus, the trial court erred in finding that the warrant was supported by probable cause. Id. at 106 (2).

Further, in *Davis v. State*, 214 Ga. App. at 37, this Court ruled as follows:

15

The affiant did not actually speak to the informant. The GBI agent who relayed the information to the affiant had never before received information from the informant. Although the GBI agent told the affiant that the informant displayed a truthful demeanor, no factual basis was given for this conclusion. The affidavit does not indicate how the informant contacted the agent or whether the agent even observed the informant in person. *The informant was merely an anonymous tipster, not entitled to preferred status regarding the credibility of his information. The complete lack of information about the informant relegated the information he supplied to the status of rumor.* Moreover, the anonymous tip is unreliable because the independent investigation done by the police in an effort to corroborate it was insufficient; the *police corroborated only that the house was located where the tipster said it was.*

(Citation omitted; emphasis supplied.)[11]

Consequently, we conclude that, because of the complete lack of information about either It or Source A, the affidavit was legally insufficient to demonstrate that either was a concerned citizen. *Harper v. State*, 283 Ga. 102, 105-106 (2); *Davis v. State*, 214 Ga. App. at 37; *Eaton v. State*, 210 Ga. App. at 275 (1). Instead, they were

---

[11] See also *Gary v. State*, 262 Ga. 573, 577 (422 SE2d 426) (1992) (The State presented no facts to the magistrate to support the affiant's conclusion that the informant was truthful.); *Eaton v. State*, 210 Ga. App. at 275.

16

merely anonymous tipsters, which "relegated the information they supplied to the status of rumor." *Eaton v. State*, 210 Ga. App. at 275 (1).

(c) However, even if the trial court erred in concluding that It was a concerned citizen entitled to a presumption of credibility, the hearsay information It provided to the officer could still support the issuance of the search warrant if the affidavit showed that the officer had sufficiently corroborated the information through further investigation. *Johnson v. State*, 265 Ga. App. 777, 780 (2) (595 SE2d 625) (2004); see also *Manzione v. State*, 312 Ga. App. at 641 (a) (the credibility of an anonymous source or person of unknown reliability must be independently corroborated).

> Hearsay and even hearsay upon hearsay may be sufficient to furnish the basis for the issuance of a valid warrant if the magistrate is informed of some of the underlying circumstances supporting the affiant's underlying conclusions and his belief that the informant was credible or his information reliable. There must be a substantial basis for crediting such hearsay.

(Citation and punctuation omitted.) *Cochran v. State*, 281 Ga. 4, 5-6 (635 SE2d 701) (2006). Thus, "[a] deficiency created by the fact that the reliability of either source has not been established can be corrected by the corroboration of the information, thereby providing a substantial basis for probable cause." (Citation omitted.) *Wood*

17

*v. State*, 214 Ga. App. 848, 849 (1) (449 SE2d 308) (1994). However, "for the corroboration to be meaningful, the [corroborating] information must include a range of details relating to *future actions* of third parties not easily predicted or similar information *not available to the general public*." (Citations and punctuation omitted; emphasis supplied.) *Evans v. State*, 263 Ga. App. 572, 575 (2) (b) (588 SE2d 764) (2003). See also *St. Fleur v. State*, 286 Ga. App. 564, 566 (1) (649 SE2d 817) (2007) (accord); *Shivers v. State*, 258 Ga. App. 253, 255 (573 SE2d 494) (2002) (accord).

As shown above, it is undisputed that It had no direct relationship with the defendant, and there is nothing in the affidavit (or in the record) to show that It had ever personally observed the drugs or the defendant using or selling drugs. Instead, the inculpatory allegations that supported the search warrant were all based upon statements made by Source A to It, who then reported them to the officer. There is nothing in the officer's affidavit, however, that sufficiently identifies Source A so that the officer could independently corroborate Source A's statements to It, had he attempted to do so. Further, other than confirming It's statements that the defendant lived at a certain address, drove a certain type of truck, and once owned a certain business, the officer did not conduct any investigation to confirm or corroborate the

18

*inculpatory* allegations of either It or Source A, such as performing surveillance of the defendant's home or conducting a controlled purchase of marijuana.

Thus, the circumstances of this case are very similar to those in *Wood v. State*, 214 Ga. App. at 849 (1), wherein this Court held as follows:

> The affiant . . . did nothing more to corroborate the information of the reliable informant than to confirm Wood's address, the make of her car and her hair color. Nothing whatsoever was done to corroborate the unidentified third-party's information. These steps, which merely verified Wood's identity but did not tie her to the commission of any crime, do not constitute corroboration so as to cure the deficiency created by the affiant's reliance on information from a source whose reliability had not been established. No matter how truthful or sincere the information from the reliable source, *the crucial question is the unidentified third-party's reliability,* and that is simply not established in the affidavit. Our decisions applying the totality of circumstances analysis have consistently recognized the value of corroboration of details of an informant's tip by independent police work. In this case, the independent investigation done by the police in an effort to corroborate the information was insufficient. . . . *[Thus, we find] that the uncorroborated statement of an unnamed third-party source, as filtered through a reliable informant to a police affiant, did not give rise to probable cause sufficient to support the issuance of a search warrant.*

(Citations and punctuation omitted; emphasis supplied.)[12]

Accordingly, as in *Wood*, we conclude that the officer's failure to independently corroborate any of the information provided by Source A (an unidentified third party) to It (an anonymous tipster) renders his affidavit insufficient to establish the reliability of either source. *Wood v. State*, 214 Ga. App. at 849 (1). Absent a showing that the information in the affidavit was reliable, the trial court erred in denying Sutton's motion to suppress. Id.

2. Sutton also contends that the trial court erred in denying his motion to suppress because the affidavit did not show probable cause to believe that a search of his home would produce evidence of possession, use, and distribution of marijuana. Given our decision in Division 1, supra, this alleged error is moot. *Sullivan v. State*, 308 Ga. App. 114, 116 (2) (706 SE2d 618) (2011).

---

[12] Cf. *Evans v. State*, 263 Ga. App. at 576 (2) (b) (Information initially provided to the affiant by an unidentified informant was sufficiently corroborated by independent statements against interest by the informant and by surveillance by DEA agents of the apartment for which the search warrant was later sought.); *Munson v. State*, 211 Ga. App. 80, 82-83 (438 SE2d 123) (1993) (The affiant obtained information from an informant, who, in turn, had received the information from an unidentified third party. Although the reliability of neither source was established, the affiant corrected the deficiency by conducting an independent investigation of the information and by involving another law enforcement agency, which further investigated and confirmed that marijuana was growing at the location indicated by the informant.).

*Judgment reversed. Phipps, P. J., and Dillard, J., concur.*