**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 12, 2020**

# In the Court of Appeals of Georgia

A19A2462. WATKINS v. THE STATE.

MERCIER, Judge.

Following a jury trial, Michael Eric Watkins was convicted of felony possession of more than one ounce of marijuana. The trial court denied his motion for new trial, and he appeals, challenging the admission of other acts evidence under OCGA § 24-4-404 (b). Watkins also argues that he received ineffective assistance of counsel at trial. Because the trial court abused its discretion in admitting evidence of a prior act involving family violence battery, we reverse.

1. "On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence." *Kier v. State*, 292 Ga. App. 208 (663 SE2d 832) (2008) (citation and punctuation omitted). So viewed, the evidence shows that on April 24,

2014, a natural gas company representative went to a home in Cobb County to investigate whether someone had illegally tapped into the company's gas line. The representative discovered an illegal connection and called the police.

Responding officers knocked on the door to the home, but no one answered. The officers heard movement inside, stepped around to the side of the house, and observed "blinds and stuff moving upstairs." Approximately 15 minutes later, Watkins and another man emerged from the home and walked toward a car in the driveway. The officers approached them, noticing a smell of marijuana on both men. A pat-down for officer safety revealed $794 in cash in Watkins's pocket. When questioned about the money, Watkins first told police that it was his disability payment, then later asserted that he had earned the money detailing cars. One of the responding officers testified that in his experience, the amount of currency and bill denominations found on Watkins were consistent with the sale of marijuana.

The officers turned their attention to the home, where Tamara Anderson stood in the open front doorway. As they made contact with Anderson, they recognized the smell of raw marijuana coming from the residence. Anderson reported that she lived in the house with the homeowner, Kenneth Vann, and she permitted the officers to

2

look for Vann inside. Vann was not there, but the officers observed what they believed to be illegal drugs and drug paraphernalia in plain view within the residence.

The officers secured the scene and obtained a search warrant. During the subsequent search, police found drugs and drug paraphernalia in two bathrooms and in the master bedroom shared by Anderson and Vann. The search of an upstairs bedroom revealed two packs of "rolling papers," marijuana residue, plastic bags of a type often used to package drugs, prescription pill bottles bearing Watkins's name, Watkins's birth certificate, and male clothing. In a common living space located outside of the upstairs bedroom, police also discovered two plastic bags containing 1.62 ounces of marijuana hidden within the springs of a couch. The marijuana seized from the couch was packaged in the same type of plastic bag found in the upstairs bedroom.

The police interviewed Watkins, who denied residing at the home, but admitted that his girlfriend lived in the upstairs bedroom and that he kept personal belongings there. According to an investigating officer, however, nothing in the upstairs bedroom "would lead [him] to believe that a female live[d] in there." Anderson also told police that Watkins resided in the house.

Watkins, Anderson, and Vann were charged "individually and as parties concerned in the commission of a crime" with possessing the marijuana hidden within the couch in the upstairs common room.[1] Both Anderson and Vann entered into plea negotiations and testified against Watkins, asserting that Watkins lived in the upstairs bedroom with his girlfriend. Although Vann pled guilty to possessing the marijuana in the couch, he testified that neither he nor Anderson put it there. Anderson similarly asserted that the marijuana did not belong to her or Vann.

In addition to the above, the State offered similar acts evidence against Watkins pursuant to OCGA § 24-4-404 (b). That evidence showed that in 2008, a Marietta police officer responded to a 911 call regarding a domestic dispute. When questioned by the officer, Watkins described the dispute as an argument. The involved woman, however, told the officer that she had a "physical altercation" with Watkins that left her with cuts on her face and upper arms. The officer testified that the woman was bleeding, very nervous, and upset, leading him to conclude that Watkins was the primary aggressor. The officer arrested Watkins for assault and transported him to jail. After booking Watkins into the jail, the officer found a bag of marijuana wrapped

---

[1] Anderson and Vann were also charged with crimes relating to other contraband and illegal drugs found in the house. The case against Watkins, however, focused solely on the two bags of marijuana seized from the couch.

4

in a piece of paper bearing Watkins's name hidden under the rear seat of his patrol car. Watkins subsequently pled guilty to family violence battery and possessing less than one ounce of marijuana.

The State also presented evidence that in 2012, a narcotics officer with the Marietta Police Department encountered Watkins outside of an apartment building during a drug investigation. When the officer approached, Watkins put his hands in the air and dropped a piece of crack cocaine in the grass. Watkins was arrested and admitted to the officer that he had come to the location to purchase cocaine. A search of the vehicle in which Watkins had arrived revealed marijuana and Xanax pills concealed underneath the vehicle's hood. Following the incident, Watkins pled guilty to possessing cocaine and less than one ounce of marijuana.

At trial, Watkins argued that the State failed to connect him to the marijuana hidden in the common-room couch. The jury disagreed and found him guilty of possessing the marijuana. Although Watkins does not challenge the sufficiency of the State's proof, we note that the evidence presented, particularly that Watkins lived in the upstairs bedroom next to the common area, that the marijuana discovered in the couch was packaged in the same type of plastic bag found in his bedroom, that he had cash on his person consistent with the sale of marijuana, and that he had previously

5

been convicted of possessing illegal drugs, authorized the jury to find him in constructive possession of the marijuana. See *Glass v. State*, 304 Ga. App. 414, 418-419 (3) (696 SE2d 140) (2010) ("A person who, though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing is then in constructive possession of it.") (citation and punctuation omitted); *Smoot v. State*, 316 Ga. App. 102, 113 (6) (729 SE2d 416) (2012) ("To prove constructive possession, the State must establish a link between the defendant and the contraband that goes beyond mere spatial proximity."). The evidence, therefore, was sufficient to support his conviction. See *Smoot*, supra at 113-114 (6); *Glass*, supra.

2. In his first claim of error, Watkins challenges admission of the prior crimes evidence at trial. Pursuant to OCGA § 24-4-404 (b),

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Even if relevant for a proper purpose, evidence of other acts may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice,

6

confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403. See also *Moton v. State*, 351 Ga. App. 789, 791-792 (833 SE2d 171) (2019) (discussing the interplay between OCGA § 24-4-403 and OCGA § 24-4-404 (b)). To secure admission of such evidence, therefore, the State must show that:

> (1) the other acts evidence is relevant to an issue other than the defendant's character; (2) the probative value is not substantially outweighed by undue prejudice under OCGA § 24-4-403 . . . ; and (3) there is sufficient proof that a jury could find by a preponderance of evidence that the defendant committed the other crimes.

*Burgess v. State*, 349 Ga. App. 635, 640 (3) (824 SE2d 99) (2019). A trial court exercises its discretion in deciding whether to admit other acts evidence, and we will not reverse the trial court's decision absent clear abuse of that discretion. See id.

Before trial, the State provided notice that it planned to introduce evidence of prior drug offenses committed by Watkins in 1994, 1995, 2008, and 2012. The trial court held a hearing on the admissibility of these offenses. The State specified that it sought to offer the other crimes evidence as proof that Watkins intended to possess the marijuana in this case. Watkins objected, arguing in particular that the 2008 incident included inadmissible evidence of family violence battery. The trial court

7

excluded the other crimes evidence from 1994 and 1995, but permitted evidence of the 2008 and 2012 offenses. In ruling, the court concluded that the "Family Violence Battery ones . . . have to go in."

(a) We first address the admissibility of Watkins's drug offenses from 2008 (possession of less than one ounce of marijuana) and 2012 (possession of cocaine and less that one ounce of marijuana). Watkins pled guilty to these prior offenses and does not dispute that he committed the crimes. Instead, he argues that the trial court erred in finding the evidence relevant and more probative than prejudicial. We disagree.

(i) *Relevance.* Because no evidence showed Watkins in actual possession of the marijuana concealed in the couch, the State was required to prove constructive possession, i.e., that he "knowingly had both the power and intention at a given time to exercise control over [it]." *Kier*, supra at 209 (1). Watkins placed intent at issue by pleading not guilty and by arguing at trial that the marijuana was not his. See *State v. Jones*, 297 Ga. 156, 161, n.4 (1) (773 SE2d 170) (2015) ("[A] defendant puts his intent in issue when he pleads not guilty unless he takes affirmative steps to withdraw intent as an element to be proved by the State."). The State thus sought to introduce

8

evidence of Watkins's 2008 and 2012 drug offenses for a proper purpose – to establish his intent to possess and control the marijuana in this case.

"Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses." *United States v. Dorsey*, 819 F2d 1055, 1060 (II) (B) (11th Cir. 1987).[2] The charged crime and the prior drug offenses required evidence that Watkins intended to possess the drug at issue. See OCGA §§ 16-13-30 (a) ("Except as authorized by this article, it is unlawful for any person to purchase, possess, or have under his or her control any controlled substance."); 16-13-30 (j) (1) ("It shall be unlawful for any person to possess, have under his or her control, manufacture, deliver, distribute, dispense, administer, purchase, sell, or possess with intent to distribute marijuana."). The necessary state of mind was the same – an intent to possess and control the illegal substance. See *Moton*, supra at 792-793. The fact that one of the prior offenses involved possession of cocaine, rather than marijuana, is immaterial to the analysis. See id. at 793.

---

[2] We "look[] to the decisions of the federal appellate courts, particularly the Eleventh Circuit, for guidance in construing and applying" OCGA §§ 24-4-403 and 24-4-404 (b), which largely track their counterparts in the Federal Rules of Evidence. *Kirby v. State*, 304 Ga. 472, 480, n.5 (4) (819 SE2d 468) (2018).

9

Furthermore, "[a] similarity between the other act and a charged offense will make the other offense highly probative with regard to a defendant's intent in the charged offense." *Moton*, supra (citation and punctuation omitted). As in this case, Watkins was not in actual possession of the marijuana recovered in 2008 and 2012. A finding of constructive possession was required. And like the marijuana hidden in the couch, the contraband in the prior cases was concealed or discarded, arguably to avoid detection. Given these factual similarities, as well as the identical intent requirement governing the crimes, the trial court was authorized to conclude that Watkins's 2008 and 2012 drug offenses were relevant to and probative of whether he intended to possess and control the marijuana hidden in the common-room couch. See OCGA § 24-4-401 (evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"); *Moton*, supra.

(ii) *Prejudice*. The trial court also determined that the probative value of the 2008 and 2012 drug offenses was not outweighed by any undue prejudice that might have been created by the evidence. We find no error. As noted by the State, the marijuana in this case was located in a common room accessible by multiple people, including Watkins, Vann, and Anderson. Vann had already pled guilty to possessing

10

the marijuana at the time of trial. And although circumstantial evidence connected Watkins to the marijuana, nothing linked him *directly* to the contraband. We thus agree with the State's assertion that it "had a compelling need for the extrinsic acts evidence of intent."

Moreover, the trial court gave extensive limiting instructions regarding the other acts, both before their admission and during the general jury charge. These instructions reduced any risk of unfair prejudice. See *Moton*, supra at 793-794. The trial court, therefore, did not abuse its discretion in concluding that the probative value of the 2008 and 2012 drug offenses outweighed the risk of undue prejudice to Watkins. See id. at 794; see also *Burgess*, supra at 642 (2) ("The major function of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.") (citation and punctuation omitted). Accordingly, evidence of the 2008 and 2012 drug offenses was admissible. See *Moton*, supra.

(b) We are constrained to reach a different conclusion as to Watkins's 2008 arrest and subsequent conviction for family violence battery. Again, the State sought to introduce Watkins's prior crimes to prove his intent to possess the marijuana in the couch. The intent requirement for marijuana possession, however, is not related to the

11

state of mind needed for a family violence battery conviction. Compare OCGA §§ 16-13-30 (j) (1) (possession of marijuana) and 16-5-23.1 (a) & (f) (intentionally causing substantial physical harm or visible bodily harm to a household member). And there is no factual similarity between the 2008 battery offense and this case, which does not involve a domestic dispute or any claim of violence. We further note that the State has not attempted to demonstrate the relevance of this specific prior crime. In fact, the State questioned below whether the "domestic violence incident" was sufficiently similar to the charged offense.

The 2008 family violence offense proves nothing with respect to Watkins's intent to possess the marijuana hidden in the couch. See *Olds v. State*, 299 Ga. 65, 72 (2) (786 SE2d 633) (2016) ("[E]vidence that an accused committed an intentional act generally is relevant to show . . . that the same defendant committed a *similar* act with the *same* sort of intent[.]") (emphasis supplied). The trial court, therefore, abused its discretion in admitting evidence of this crime at trial. See *Kirby*, supra at 487 (4) (b) (abuse of discretion to admit irrelevant other acts evidence); see also *McMullen v. State*, 316 Ga. App. 684, 692 (2) (730 SE2d 151) (2012) ("[W]e can discern no relevance that a ten-plus year old conviction for possession of methamphetamine with intent to distribute would have to the determination of whether [the defendant] was

12

under the influence of a combination of drugs to the extent that it rendered her a less safe driver during the accident at issue.") (citation omitted) (decided under former OCGA § 24-2-2).

Seeking to avoid a reversal, the State argues that regardless of whether the trial court erred in admitting evidence of the prior battery offense, any such error was harmless given the "substantial" proof of Watkins's guilt. "The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." *Houseworth v. State*, 348 Ga. App. 119, 131 (2) (b) (820 SE2d 231) (2018) (citation and punctuation omitted). In conducting this analysis, "we weigh the evidence as we would expect reasonable jurors to have done so, as opposed to assuming that they took the most pro-guilt possible view of every bit of evidence in the case." Id. (citation and punctuation omitted).

As discussed above, the evidence was sufficient to link Watkins to the marijuana hidden in the couch, authorizing the jury to find him in constructive possession of the drugs. This link, however, was hardly overwhelming. No evidence directly connected Watkins to the marijuana, which was found in the common living space of a house containing other illegal drugs and occupied by multiple residents. Furthermore, one of the other residents had already pled guilty to possessing the

13

marijuana at the time of trial. Citing this dearth of evidence, the State highlighted a "compelling need" for the admission of extrinsic acts in this case. Its effort to now characterize the evidence as "substantial" is disingenuous.

Evidence of the 2008 family violence battery offense served no proper purpose at trial and revealed inflammatory facts regarding Watkins's prior physical abuse of a female. Under these circumstances, "we cannot say that it is highly probable that the error [in admitting the evidence] did not contribute to the verdict." *Houseworth*, supra (citation and punctuation omitted). We must therefore reverse Watkins's conviction.[3] See id.; see also *Eiland v. State*, 213 Ga. App. 838, 838-839 (1) (445 SE2d 765) (1994) (reversal required where trial court admitted a prior indictment at trial without redacting references to inadmissible prior acts evidence).

3. We need not address Watkins's ineffective assistance of counsel allegations as they are unlikely to recur if the State elects to retry Watkins. See *Mitchell v. State*, 326 Ga. App. 899, 902 (2) (755 SE2d 308) (2014).

*Judgment reversed. Barnes, P. J., and Brown, J., concur*.

---

[3] Although the evidence was not overwhelming, it was sufficient to sustain the jury's verdict, so double jeopardy does not bar a retrial. See *Houseworth*, supra.