**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**March 23, 2015**

# In the Court of Appeals of Georgia

A14A1545. WIGGINS v. THE STATE.

DILLARD, Judge.

We granted Jack Wiggins's application for interlocutory review of the trial court's denial of his motion to suppress evidence discovered during a search of his home. On appeal, Wiggins argues that the search was invalid because there was insufficient probable cause to support the issuance of the search warrant. We agree, and for the reasons set forth *infra*, reverse.

Viewed in the light most favorable to the trial court's ruling,[1] the evidence shows that, on June 22, 2012, Samone Burnes, an undercover narcotics agent with the Kennesaw Police Department ("KPD"), received a written complaint from Lieutenant

---

[1] *See, e.g.*, *Christian v. State*, 329 Ga. App. 244, 245 (1) (764 SE2d 573) (2014).

Graden, also with the KPD, conveying that an anonymous informant had given him information about Wiggins "selling narcotics at his residence and storing narcotics [there]." Agent Burnes later spoke with Lt. Graden regarding the complaint, but he did not tell her "anything about [the informant] or who he [was]." About a week later, Agent Burnes had a telephone conversation with the anonymous informant, who told her that Wiggins had an "indoor mushroom grow," that he was selling "approximately 50 pounds of marijuana from [his] residence" each week, that the informant had seen the drugs in Wiggins's home, and that there were cameras on the exterior of the house. But the informant did not advise Agent Burnes of when this alleged criminal activity occurred, and Burnes testified that she did not know if it occurred "five years ago or one week before [she] received the complaint." Agent Burnes also did not learn anything about the informant during the call.

On June 27, 2012, Agent Burnes went to Wiggins's residence to begin a surveillance operation. Approximately ten minutes after she arrived, Agent Burnes observed a male, later identified as Wiggins, and a female leave the house and drive away in Wiggins's truck. Agent Burnes followed them, and she noticed that Wiggins was "driving pretty fast." At her request, another KPD agent arrived, and after he observed Wiggins commit a traffic violation, he initiated a traffic stop. And while

conducting the stop, the agent searched Wiggins's truck because he smelled the odor of marijuana emanating from the vehicle. In doing so, the agent discovered a bag of marijuana, which weighed 19.7 grams (including the packaging), and a revolver in the glove box. Agent Burnes averred that the bag was "marked 17 (commonly marked for weight by drug dealers)."

Wiggins was arrested and issued citations for possession of marijuana[2] and failure to maintain lane. Immediately thereafter, KPD agents went to Wiggins's residence, where they observed cameras on the outside of his house. They also spoke with Wiggins's female passenger, who told them that she had smoked marijuana at Wiggins's house on "multiple occasions." Ultimately, Agent Burnes requested and obtained a search warrant for Wiggins's home, and in executing the warrant, KPD agents discovered numerous controlled substances and related paraphernalia.

In a twelve-count indictment, Wiggins was charged with possession of marijuana, possession with intent to distribute marijuana, possession of stanozolol, possession of methamphetamine, possession of methylenedioxymethamphetamine

---

[2] Because Wiggins was found in possession of less than an ounce of marijuana, he was subject only to a misdemeanor possession charge. *See* OCGA § 16-13-2 (b) ("Notwithstanding any law to the contrary, any person who is charged with possession of marijuana, which possession is of one ounce or less, shall be guilty of a misdemeanor . . . .").

3

(MDMA), possession of boldenone undecylenate, possession of alprazolam, possession of oxycodone, possession of lysergic acid diethylamide (LSD), possession of zolpidem, possession of estazolam, and possession of ketamine.

Prior to trial, Wiggins filed a motion to suppress the drug evidence found in his home. The trial court held a hearing on the motion, at which Agent Burnes and other KPD agents testified. And at its conclusion, the trial court noted that it was not "impressed with [Agent Burnes's] conduct or her investigation, because there was none." The court also indicated that it was "very concerned" about Agent Burnes's failure to provide the magistrate with a time frame of when the reported drug sales occurred. Lastly, the court indicated that it did not consider ten minutes to be an adequate amount of surveillance. Nevertheless, in a summary order, the trial court denied Wiggins's motion to suppress. Wiggins then filed a petition for a certificate of immediate review, which the trial court granted. We then granted his application for an interlocutory appeal .

On appeal, Wiggins contends that the search warrant was invalid because the supporting affidavit—which relied solely on an uncorroborated tip from an anonymous informant, Wiggins's possession of a personal-use amount of marijuana, and a statement from an acquaintance of Wiggins that she had smoked marijuana at

4

his home numerous times—did not give rise to sufficient probable cause to suggest that he was running a drug-distribution operation out of his home. We agree.

We begin by noting that, in considering a trial court's denial of a motion to suppress, we construe the evidence in favor of the court's ruling, "and we review de novo the trial court's application of the law to undisputed facts."[3] Moreover, in accordance with the Fourth Amendment to the United States Constitution,[4] a search warrant in Georgia may issue only upon "facts sufficient to show probable cause that a crime is being committed or has been committed . . . ."[5] And in determining whether probable cause exists, the issuing judge is required simply to make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that evidence of a crime will be found

---

[3] *Christian*, 329 Ga. App. at 245 (1) (punctuation omitted); *accord Reid v. State*, 321 Ga. App. 653, 653 (742 SE2d 166) (2013).

[4] *See* U.S. CONST. amend IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.").

[5] OCGA § 17-5-21 (a); *see also Sullivan v. State*, 284 Ga. 358, 360 (2) (667 SE2d 32) (2008); *Manzione v. State*, 312 Ga. App. 638, 639 (719 SE2d 533) (2011).

in a particular place."[6] Finally, in reviewing the validity of a search warrant, this Court is charged with "ensuring—considering the totality of the circumstances and giving substantial deference to the issuing judge's decision—that the judge had a 'substantial basis' for concluding that probable cause existed."[7] Bearing these guiding principles in mind, we turn now to Wiggins's claim that the search warrant for his residence was invalid.

In the case *sub judice*, Agent Burnes sought to establish probable cause for the search warrant by averring that (1) an anonymous tipster reported that Wiggins was selling 50 pounds of marijuana out of his home per week, that his home contained a "mushroom grow," that the informant had seen these drugs, and that there were surveillance cameras outside of Wiggins's house; (2) during a traffic stop, Wiggins was found in possession of 19.7 grams of marijuana (including the packaging), which was "inside a plastic bag labeled 17 (commonly marked for weight by drug dealers)," and a revolver, which was located in his glove box; and (3) the female passenger in

---

[6] *Cochran v. State*, 281 Ga. 4, 5 (635 SE2d 701) (2006) (punctuation omitted); *accord Manzione*, 312 Ga. App. at 639-40.

[7] *Manzione*, 312 Ga. App. at 640; *see Lemon v. State*, 279 Ga. 618, 620 (1) (619 SE2d 613) (2005); *Jones v. State*, 313 Ga. App. 590, 593 (2) (722 SE2d 202) (2012).

Wiggins's truck reported that she had smoked marijuana at Wiggins's house on "multiple occasions."[8]

Regarding anonymous informants, we have previously held that an "uncorroborated telephone call from an anonymous tipster is not alone sufficient to base a finding of probable cause."[9] We must also determine, among other things,

_____

[8] Although Wiggins does not argue that the alleged probable cause in this case had gone stale by the time the warrant was issued, it is noteworthy that Agent Burnes's affidavit provided no indication of when the alleged criminal activity occurred. *See Banks v. State*, 277 Ga. 543, 546 (2) (592 SE2d 668) (2004) (recognizing that "[t]he time of the occurrence of the facts relied upon is a prime element in the concept of probable cause" (punctuation omitted)); *Land v. State*, 259 Ga. App. 860, 862 (1) (578 SE2d 551) (2003) (noting that the search-warrant affidavit suffered from numerous deficiencies, the most fatal of which was the element of time); *State v. Brantley*, 264 Ga. App. 152, 154 (589 SE2d 716) (2003) (explaining that "[i]f the prior circumstances relied on to establish probable cause have grown stale with time, they are unlikely to provide a reliable barometer of present criminal conduct" (punctuation omitted)).

[9] *McRae v. State*, 204 Ga. App. 234, 235 (1) (418 SE2d 796) (1992); *see also Harper v. State*, 283 Ga. 102, 105-06 (2) (657 SE2d 213) (2008) (holding that an uncorroborated report from an anonymous informant, alleging that he learned from a relative of the defendant that the defendant had confessed to murder, was insufficient probable cause to support the issuance of a search warrant when the affidavit failed to provide any reason to believe that the information was from a credible source); *Wood v. State*, 214 Ga. App. 848, 849 (1) (449 SE2d 308) (1994) (finding that "the uncorroborated statement of an unnamed third-party source, as filtered through a reliable informant to a police affiant, did not give rise to probable cause sufficient to support the issuance of a search warrant"); *Stola v. State*, 182 Ga. App. 502, 503 (1) (356 SE2d 222) (1987) ("An uncorroborated telephone call from an anonymous tipster, standing alone, is insufficient upon which to base probable

7

whether "the hearsay information supplied to the affiant, coupled with the affiant's personal observations, presented a fair probability that contraband would be found at [Wiggins's] residence."[10] Here, Agent Burnes did not identify any actions that she took to determine the reliability of the anonymous informant, who she admittedly knew nothing about. And because she took no such actions, her affidavit provided no information whatsoever regarding the informant, much less any indicia of his reliability. Thus, given the complete lack of information regarding the anonymous informant, his motives, or the basis for his knowledge, his allegations, standing alone, were insufficient to establish probable cause for the search of Wiggins's home.[11]

_____

cause to arrest").

[10] *McRae*, 204 Ga. App. at 235 (1) (punctuation omitted); *see Fair v. State*, 284 Ga. 165, 171 (3) (b) (664 SE2d 227) (2008); *State v. Brown*, 186 Ga. App. 155, 156 (1) (366 SE2d 816) (1988).

[11] *See supra* note 9; *State v. LeJeune*, 276 Ga. 179, 181 (1) (576 SE2d 888) (2003) (emphasizing that, in determining whether probable cause exists to issue a search warrant, a magistrate should consider all the circumstances set forth in the affidavit, "*including the 'veracity' and 'basis of knowledge' of the person supplying hearsay information*" (emphasis in original)); *Copeland v. State*, 273 Ga. App. 850, 851 (1) (a) (616 SE2d 189) (2005) (explaining that "[w]here the State seeks to establish probable cause with information from an unidentified source, the informant's veracity and basis of knowledge are major considerations in the probable cause analysis" (punctuation omitted)); *Lyons v. State*, 258 Ga. App. 9, 12 (1) (572 SE2d 632) (2002) ("An unvarnished statement that the informant has seen drugs in someone's house cannot establish probable cause to search."); *Langford v. State*, 213

Nevertheless, we have acknowledged that a deficiency created by the fact that the reliability of a source has not been established can "be corrected by the corroboration of the information, thereby providing a substantial basis for finding probable cause."[12] And for the corroboration to be meaningful, the corroborating information must "include a range of details relating to *future actions* of third parties not easily predicted or similar information *not available to the general public*."[13]

Regarding corroboration, Agent Burnes testified that she surveilled Wiggins's residence—where he was allegedly distributing *50 pounds of marijuana every week*—for only ten minutes, an amount of surveillance that the trial court found to be

Ga. App. 232, 233 (1) (444 SE2d 153) (1994) (holding that there was insufficient probable cause for the issuance of a warrant when the magistrate was not provided with any information regarding the informant's veracity or basis of knowledge, and the affiant testified at the suppression hearing that he had no knowledge of the informant).

[12] *Sutton v. State*, 319 Ga. App. 597, 607 (1) (c) (737 SE2d 706) (2013) (punctuation omitted); *see St. Fleur v. State*, 286 Ga. App. 564, 566 (1) (649 SE2d 817) (2007) ("[E]ven if an officer cannot provide information regarding the veracity of an informant or the basis of his knowledge, a tip may be proven reliable if portions of the tip are sufficiently corroborated." (punctuation omitted)); *cf Banks*, 277 Ga. at 546 (2) (holding that insufficient evidence supported the issuance of a search warrant when there were no objective facts to corroborate the hearsay information provided by unidentified informants).

[13] *Sutton*, 319 Ga. App. at 607 (1) (c) (emphasis in original); *accord Land*, 259 Ga. App. at 863 (1); *Shivers v. State*, 258 Ga. App. 253, 255 (573 SE2d 494) (2002).

insufficient. And rightly so. As the record makes clear, there was essentially no investigation to determine the anonymous informant's reliability or to corroborate his claims. Nevertheless, the State contends that the informant's claim that there were cameras outside of Wiggins's residence was corroborated when KPD officers confirmed the existence of those cameras. But this is not meaningful corroboration because the cameras were on the *exterior* of Wiggins's residence and visible to the general public. Indeed, KPD agents observed the cameras outside of the house *before* obtaining the search warrant and entering Wiggins's residence.[14]

The State also contends that the anonymous tip was corroborated by Wiggins's possession of marijuana contained inside a bag with a marking commonly used by drug dealers. And while we agree that this evidence reasonably supports an inference that Wiggins is a marijuana user, it strains credulity to suggest that his possession of less than one ounce of marijuana in a single bag with this marking is sufficient to

---

[14] *See Land*, 259 Ga. App. at 863 (1) (holding that informant's knowledge of defendant's home address, telephone number, and living arrangements did not make the informant reliable because the "same information was available to the general public"); *State v. Bryant*, 210 Ga. App. 319, 321 (436 SE2d 57) (1993) (holding that corroboration of an informant's description of defendant's appearance, residence, car, and bank was public information and not sufficiently meaningful to show reliability).

10

demonstrate his possible involvement in a high volume drug-distribution operation.[15]

Indeed, with the exception of the revolver, the KPD agent who searched Wiggins's truck did not discover any items commonly used in drug distribution, such as a large amount of cash, a substantial amount of drugs, scales, drugs portioned for sale in separate baggies, drug-packaging materials, or any other drug paraphernalia.[16]

---

[15] The State makes much of the fact that the bag was marked with the weight of the marijuana, which, according to Agent Burnes, is a common marking used by drug dealers. But this evidence merely creates an inference that, at some point, a drug dealer marked the bag with its weight. Agent Burnes did not aver that such markings are removed before sale or otherwise suggest that only a drug dealer would be in *possession* of a bag marked with the drug's weight. Absent more information about this marking, we fail to see how Wiggins's possession of a single bag of less than an ounce of marijuana bearing such a marking corroborates the informant's allegation that he was engaged in drug dealing.

[16] *See Clark v. State*, 245 Ga. App. 267, 268-69 (537 SE2d 742) (2000) (distinguishing, in the context of a sufficiency-of-the-evidence challenge, the possession of marijuana for personal use from possession with intent to distribute, and concluding that the evidence was insufficient to show drug sales or distribution when the State produced no evidence that the defendant had scales, guns, cash, drug packaging materials, a large quantity of marijuana, or had conducted prior drug sales); *Compare Macias v. State*, 292 Ga. App. 225, 229 (2) (a) (664 SE2d 265) (2008) (holding that there was sufficient probable cause for a search of defendant's residence when, during a search of his car, police discovered 17.5 grams of methamphetamine, portions of which were packaged in smaller baggies, and $3,700 in cash).

11

As for the revolver, Wiggins appeared to have lawfully possessed it,[17] and it was not discovered in close proximity to any other signs of drug dealing (such as a significant amount of drugs).[18] More importantly, it bears repeating that the magistrate was not given any information regarding how much time had passed between Wiggins's alleged drug trafficking and his possession of the firearm, so it is unclear whether the two are in any way related.[19] Simply put, Wiggins's possession of a relatively small amount of marijuana and a legally owned firearm during a traffic stop, with no other indicia of drug distribution, was insufficient corroboration for the anonymous informant's claim that, at some unknown time, Wiggins was trafficking in a substantial amount of marijuana every week out of his home.[20]

---

[17] Wiggins was not charged with unlawful possession of a firearm, KPD officers allowed his passenger to leave with the gun, and the search-warrant affidavit made no mention of the gun possession being unlawful.

[18] *Compare*, *e.g.*, *Wright v. State*, 272 Ga. App. 423, 426, 428 (3) (612 SE2d 576) (2005) (holding that drugs and an *illegal* weapon in the defendant's vehicle gave the officer probable cause to arrest the defendant and conduct a more thorough search of her vehicle, when the firearm was discovered next to "a large quantity of what appeared to be packaged methamphetamine").

[19] *See supra* note 8.

[20] *See supra* note 16; *see, e.g. United States v. Underwood*, 725 F3d 1076, 1082-83 (III) (A) (9th Cir. 2013) (affirming the grant of a motion to suppress and holding that the observation of a personal-use amount of marijuana in the defendant's

12

Finally, the State asserts that the female passenger in Wiggins's truck, who told police that she had smoked marijuana at his house on multiple occasions, corroborated the informant's allegations. However, his passenger's claim that *she* previously smoked marijuana at Wiggins's house does not suggest that he was *currently* involved in drug trafficking. Indeed, she did not indicate whether she ever purchased marijuana from Wiggins, whether she ever observed him selling it to others, whether she had seen the alleged mushroom grow, or whether she had witnessed any other indicia of drug trafficking in his home. Furthermore, she did not specify how recently she had smoked marijuana at Wiggins's house.[21] Under these particular circumstances, the acquaintance's admission that she used drugs at Wiggins's house on unspecified occasions does not create a fair probability that

home supported only the inference that the defendant was a marijuana user, not that he was a courier in an ecstasy-trafficking organization or that evidence of such trafficking would be found in his home); *United States v. McPhearson*, 469 F3d 518, 527 (IV) (C) (6th Cir. 2006) (holding that there was insufficient probable cause to support a search warrant when none of the "hallmarks of drug dealing" had been witnessed in defendant's home and the affidavit did not allege "any criminal activity other than personal possession of crack cocaine"); *State v. Cash*, 316 Ga. App. 324, 327 (728 SE2d 918) (2012) (affirming the grant of a motion to suppress when "the averments in the affidavit were sufficient to indicate that the drug suspect was involved in personal drug use, [but] they were insufficient to indicate that the drug suspect had been selling, distributing, or trafficking drugs").

[21] *See supra* note 8.

evidence of drug trafficking would be found there at the time the warrant was issued.[22]

In sum, the Supreme Court of Georgia has "cautioned attesting officers and magistrates to make every effort to see that supporting affidavits reflect the maximum indication of reliability,"[23] and as recognized by the trial court during the suppression hearing, such efforts were simply not made in this case. Although we are mindful that "the resolution of doubtful or marginal cases in this area should be largely determined

---

[22] *See Manzione*, 312 Ga. App. at 639-40 (a) (explaining that, to issue a search warrant, a magistrate must determine, given all of the information provided in the supporting affidavit, that there is a fair probability that evidence of criminal conduct will be found at a particular place); *State v. Charles*, 264 Ga. App. 874, 876 (2) (592 SE2d 518) (2003) (holding that evidence that police smelled the "slight odor of burned marijuana" outside of the defendant's room combined with the defendant's admission that he had used marijuana earlier in the day was insufficient probable cause to suggest marijuana was currently on the premises); *State v. Suddeth*, 207 Ga. App. 103, 105 (427 SE2d 76) (1993) (finding that probable cause did not exist for the issuance of a search warrant for defendant's residence when, *inter alia*, no evidence linked the defendant to her husband's illegal possession of drugs).

[23] *Gary v. State*, 262 Ga. 573, 577 (422 SE2d 426) (1992) (punctuation omitted); *accord Clemons v. State*, 257 Ga. App. 96, 99 (1) (574 SE2d 535) (2002); *see State v. Luck*, 252 Ga. 347, 348 (312 SE2d 791) (1984) (reiterating the "importance of the submission, by affidavit, to the issuing magistrate of the maximum quantum of reliable information within the knowledge of the affiant, and the demonstration of the reliability thereof—including indicia of timeliness").

by the preference to be accorded to warrants,"[24] we nevertheless conclude that the anonymous informant's wholly uncorroborated allegations that Wiggins was selling drugs at some undisclosed time—even combined with evidence that Wiggins legally possessed a firearm during a traffic stop and that he and his friend had previously used marijuana—did not provide a substantial basis for determining that probable cause existed to search Wiggins's residence at the time when the warrant was issued.[25] The fact that Wiggins appears to have actually been engaged in drug

_____

[24] *State v. Palmer*, 285 Ga. 75, 77-78 (673 SE2d 237) (2009) (punctuation omitted).

[25] *See Harper*, 283 Ga. at 105-06 (2) (holding that an uncorroborated report from an anonymous informant, alleging that he learned from a relative of the defendant that the defendant had confessed to murder, was insufficient probable cause to support the issuance of a search warrant when the affidavit failed to provide any reason to believe that the information was from a credible source); *Sutton*, 319 Ga. App. at 606 (1) (b) (holding that the "complete lack of information" about two anonymous sources meant that they were "merely anonymous tipsters, which relegated the information they supplied to the status of rumor" (punctuation omitted)); *Land*, 259 Ga. App. at 862-63 (1) (holding that there was insufficient probable cause to support the issuance of a search warrant when, *inter alia*, a confidential informant reported seeing the defendant engage in a single, isolated drug transaction, but did not indicate when the transaction occurred); *Shivers*, 258 Ga. App. at 257 (reversing the denial of a motion to suppress when numerous reports from unnamed informants amounted to mere rumors of criminal activity from sources who were not shown to be reliable and probable cause was not established by police observations of the residence); *see also Maxwell v. State*, 127 Ga. App. 168, 169 (193 SE2d 14) (1972) (reversing the denial of a motion to suppress when no time element was shown as to when illegal contraband was present); *Latten v. State*, 127 Ga. App.

15

trafficking is ultimately of no consequence for purposes of our analysis, which is grounded in the safeguards afforded by the Fourth Amendment.[26]

For all of the foregoing reasons, we reverse the trial court's denial of Wiggins's motion to suppress evidence.

*Judgment reversed. Doyle, P. J., concurs. Miller, J., concurs in judgment only.*

---

75, 75 (192 SE2d 562) (1972) ("Absent the time of the occurrence of the facts relied upon, probable cause for issuance of the search warrant is not established.").

[26] *See Kyllo v. State*, 533 U.S. 27, 31 (II) (121 SCt 2038, 150 LEd2d 94) (2001) ("At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." (punctuation and citation omitted)); *Ker v. State of Cal.*, 374 U.S. 23, 32 (I) (83 SCt 1623, 10 LEd2d 726) (1963) ("Implicit in the Fourth Amendment's protection from unreasonable searches and seizures is its recognition of individual freedom. That safeguard has been declared to be 'as of the very essence of constitutional liberty' the guaranty of which 'is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen.'"); *Doe v. Heck*, 327 F3d 492, 509 (2003) (noting that "the basic purpose of the Fourth Amendment is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials . . . ." (punctuation and citation omitted)).