**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 19, 2019**

# In the Court of Appeals of Georgia

A18A1596. BURGESS v. THE STATE.

McMILLIAN, Judge.

Donald Terald Burgess was convicted by a jury of possession of cocaine with intent to distribute and sale of cocaine.[1] He appeals, arguing that the evidence was insufficient and that the trial court erred by denying his motion to suppress evidence of the contraband and by admitting evidence of a prior crime under OCGA § 24-4-404 (b). We find no merit to these contentions and affirm.

The record shows that around December 8, 2014, a detective with the Clarke County Sheriff's Office ("Detective") who had been assigned to the Northeast Georgia Regional Drug Task Force, set up surveillance of room 155 of the Bulldog Inn ("Inn") located in Athens, Georgia, which was a corner unit located in a separate

---

[1] Burgess was acquitted of one charge of trafficking in illegal drugs (heroin).

building behind the main part of the Inn. The Detective continued to surveil the room for the next several weeks during which time he saw a pattern of behavior of Burgess arriving at the Inn in the morning and then going to room 155.[2] The Detective observed that during the course of the day, different people would arrive at the Inn and go to Burgess' room. The Detective saw Burgess open the door to allow these different individuals to enter his room, and after a short amount of time, Burgess would exit the room and go around to a storage room that was located adjacent to his room. Burgess would go into the storage room, stay for a short period, and then exit the storage room and go back to his room. After several minutes, sometimes less, the person who had been observed going into Burgess' room would then leave. With the exception of Elizabeth Clink, who was a known cocaine user who also had a room at the Inn, none of the people seen entering Burgess' room would accompany him to the storage room, and this same pattern of activity would occur multiple times almost every day during the surveillance period. At the end of the day, Burgess would exit the room and leave the premises in his car.

---

[2] Burgess was supposedly employed by the owners of the Inn to be on-call to cover the front desk or to perform other tasks. However, the Detective testified he never saw Burgess staffing the front desk and said that it was not common for him to be out of the room except to make the trips to the storage closet.

Based on his observations and other evidence, the Detective obtained a warrant to conduct a search of room 155 and the storage closet. The Detective and other law enforcement officers arrived at the Inn on December 19, 2014, to execute the warrant. Immediately before the warrant was executed, police observed a woman, subsequently identified as Norene Smith, enter Burgess' room. Consistent with prior observations, Burgess exited the room and went to the storage room, came out of the storage room, and went back to his room. Smith then exited room 155 and started walking back to her car. Police saw Smith, who was familiar to them as a drug user, put something in her mouth, and they intercepted Smith in the parking lot and told her to spit it out; officers retrieved the substance, which they said looked like a piece of crack cocaine. Smith told officers that she purchased the cocaine from Burgess, and she also testified at trial and admitted that she put a piece of "crack" in her mouth and then spit it out at the direction of police. She said she purchased the cocaine from Burgess and that she paid him $20.00 for the piece of cocaine. Subsequent forensic testing indicated the substance Smith purchased from Burgess was in fact cocaine.

While the situation with Smith was unfolding, the Detective and other officers were executing the search warrant. Officers knocked on Burgess' door, and Burgess looked out the window. He hesitated for a moment and then opened the door. Police

entered the room and detained Burgess and another man. Officers searched the room and located a quantity of clear "corner" bags that are commonly used to store or resale small quantities of narcotics or drugs under the liner of the garbage can in the room and a pair of binoculars. Officers also found $637 in Burgess' right front pants pocket and observed that there was a twenty dollar bill stuck down into the center of the money, which was not part of the fold.

The storage room was also searched. During that search, police found a digital scale hidden above the door frame and a bag of what appeared to be new hypodermic needles stuck inside the insulation by the door near the storage room. Additionally, officers found two magnetic boxes stuck to an electrical panel; one box contained what was subsequently identified as 3.26 grams of "loose solid" cocaine and .95 grams/20 pieces of "solid"/crack cocaine, and the other box contained what was subsequently identified as 9.03 grams of heroin. The Detective testified that based on his training and experience, the amount of cocaine discovered in the magnetic box was consistent with an intent to distribute as opposed to simple possession. Additionally, the State introduced evidence that Burgess was convicted of possession of cocaine with intent to distribute in 2003. After Burgess was convicted of

4

possession of cocaine with intent to distribute and sale of cocaine, this appeal followed.

1. Burgess first contends that the evidence was insufficient to support his convictions because no drugs were found on his person or in his room at the Inn and that others, including at least one known drug dealer, had access to the storage room where the drugs were found. However, "it is well established that possession of drugs can be actual or constructive, sole or joint." (Citation and punctuation omitted.) *Duncan v. State*, 346 Ga. App. 777, 780 (815 SE2d 294) (2018). "A person who knowingly has direct physical control over a thing at a given time is in actual possession of it." (Citation and punctuation omitted.) *Murphy v. State*, 314 Ga. App. 753, 755 (2) (725 SE2d 866) (2011). And a person who has both the power and intention to exercise dominion or control over a thing at a given time is in constructive possession of it. "[S]o long as there is 'slight evidence of access, power, and intention to exercise control or dominion over an instrumentality, the question of fact regarding constructive possession remains within the domain of the trier of fact.'" *Duncan*, 346 Ga. App. at 781 (1).

Although the evidence here was largely circumstantial, the jury was entitled to infer from the pattern of activity observed by police over almost a two week period

5

that Burgess was using the storage room near his motel room to store drugs, which he then retrieved and sold out of his motel room. And while this evidence came in part from the observations of the surveilling officer, the State also presented testimony from a witness who had purchased cocaine from Burgess, and Burgess' conduct during this transaction was consistent with his conduct with other individuals who visited his room during the surveillance period. Although Burgess asserts that this witness should not be believed because she was a known drug user and convicted felon, such matters were brought out before the jury, and it was the duty of the jury, not this Court, to decide witness credibility. The fact that they did so adversely to Burgess was within their prerogative, and as long as there was some competent evidence to support each element of the crimes charged, Burgess is not entitled to a reversal on this basis. E.g., *Jones v. State*, 318 Ga. App. 26, 29 (1) (a) (733 SE2d 72) (2012).

Also, the jury was authorized to infer Burgess' intent to distribute from the extrinsic evidence establishing his previous conviction for possession of cocaine with intent to distribute, as well as testimony from an experienced narcotics officer that the amount of contraband found in the storage room was inconsistent with personal use,

the plastic bags found in Burgess' room were of the same type used to package drugs for sale, and the money found on his person.

> The issue of intent is peculiarly a question of fact for jury determination [and] even if not formally admitted as an expert, a police officer may give his opinion as to whether the amount or value of the contraband is consistent with distribution, if the State lays a foundation for the opinion by eliciting testimony about the officer's experience and training in drug enforcement.

(Indention, citation and punctuation omitted.) *Barber v. State*, 317 Ga. App. 600, 605 (3) (732 SE2d 125) (2012).

Having reviewed the evidence set out above as well as other evidence presented at trial, we conclude that ample evidence authorized the jury to conclude that Burgess sold cocaine and possessed cocaine with the intent to distribute.

2. Burgess next argues that the trial court erred by denying his motion to suppress evidence seized during the search because there was insufficient probable cause to support the issuance of the warrant.

Under the Fourth Amendment to the United States Constitution, OCGA § 17-5-21 (a), and established precedent, "[a] search warrant will only issue upon facts

7

sufficient to show probable cause that a crime is being committed or has been committed." *State v. Palmer*, 285 Ga. 75, 77 (673 SE2d 237) (2009).

> In determining the existence of probable cause, the issuing judge is required simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Our duty in reviewing the magistrate's decision in this case is to determine if the magistrate had a "substantial basis" for concluding that probable cause existed to issue the search warrants. A magistrate's decision to issue a search warrant based on a finding of probable cause is not a hypertechnical one to be employed by legal technicians, but is based on the factual and practical considerations of everyday life on which reasonable and prudent men act. Moreover, even doubtful cases should be resolved in favor of upholding a warrant.

(Citations and punctuation omitted.) *Taylor v. State*, 303 Ga. 57, 60-61 (2) (810 SE2d 113) (2018). *Woods v. State*, 346 Ga. App. 323, 324 (816 SE2d 156) (2018).

Relying on *Wiggins v. State*, 331 Ga. App. 447 (771 SE2d 135) (2015), Burgess argues that the facts here were insufficient to establish probable cause due to the lack of information regarding the anonymous informant whose information led

8

to the instigation of the investigation and the lack of sufficient corroboration of the information provided by the informant. We disagree.

First, we note that *Wiggins* is physical precedent only and thus not binding on this Court. See Court of Appeals Rule 33.2 (a). And although physical precedent can have persuasive authority, we find *Wiggins* to be of limited utility because it is factually distinguishable. Although both *Wiggins* and this case involve situations where the investigation leading to the arrest of the appellant was instigated after a tip from an anonymous source, in *Wiggins,* unlike in this case, after the investigating officer received the anonymous tip, there was "essentially no investigation to determine the anonymous informant's reliability or to corroborate his claims." *Wiggins*, 331 Ga. App. at 451. See also *Creamer v. State*, 337 Ga. App. 394, 397 (1) (788 SE2d 69) (2016). Here, the Detective who received the tip and obtained the warrant surveilled the premises out of which Burgess was conducting his drug sales for almost two weeks, during which time he observed a pattern of activity which was consistent with the description of drug activity provided by the anonymous source. Further, before he obtained the warrant, and as also outlined in the affidavit submitted in support of the warrant, the Detective used a confidential source outfitted with an audio transmitter to buy narcotics, and the activity the officer observed during the buy

was consistent with what the officer observed during his surveillance. Although Burgess complains the Detective did not actually witness the controlled buy and never actually saw narcotics pass through Burgess' hands, law enforcement officers are not required to actually see drugs at the residence in order to establish probable cause for the issuance of the search warrant. *Woods*, 346 Ga. App. At 326. The trial court did not err by denying Burgess' motion to suppress. See *Palmer*, 285 Ga. at 79.

3. Lastly, we turn to Burgess' contention that the trial court erred by admitting evidence of his prior criminal conviction for possession of cocaine with intent to distribute under OCGA § 24-4-404 (b). Following a hearing, the trial court ruled the evidence admissible for the purposes of showing intent and knowledge and instructed the jury at the time the evidence was admitted and again in its final instructions to limit their consideration of the evidence to those purposes. We review a trial court's decision to admit evidence of other crimes for a clear abuse of discretion. *Thompson v. State*, 302 Ga. 533, 539-40 III (A) (807 SE2d 899) (2017); *State v. Jones*, 297 Ga. 156, 159 (1) (773 SE2d 170) (2015).

For cases tried after January 2, 2013, the admissibility of other acts evidence is governed by OCGA § 24-4-404 (b), which provides:

Evidence of other crimes, or wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Under the three-part test for admissibility adopted by our Supreme Court, the moving party must show that (1) the other acts evidence is relevant to an issue other than the defendant's character; (2) the probative value is not substantially outweighed by undue prejudice under OCGA § 24-4-403 (the "Rule 403 balancing test"); and (3) there is sufficient proof that a jury could find by a preponderance of evidence that the defendant committed the other crimes. *Jones v. State*, 301 Ga. 544, 545 (802 SE2d 234) (2017); *Olds v. State*, 299 Ga. 65, 69-70 (2) (786 SE2d 633) (2016); *Bradshaw v. State*, 296 Ga. 650, 656 (3) (769 SE2d 892) (2015). In this case, Burgess mainly argues the State did not provide the trial court with enough information to properly conduct the three-part test because it only introduced the prior accusation and conviction without offering any testimony or proffer concerning the facts surrounding the prior offense. We find no reversible error.

The threshold inquiry under the three-part test set out above is whether the evidence is probative of a material issue other than character. *Thompson*, 302 Ga. at

11

539 III (A). Here, the trial court admitted the evidence to show intent and knowledge, which are among the list of commonly recognized permissible purposes set out in OCGA § 24-4-404 (b). As to intent, "a defendant puts his intent in issue when he pleads not guilty unless he takes affirmative steps to withdraw intent as an element to be proved by the State." *Jones*, 297 Ga. at 161 (2), n.4. Although Burgess pleaded not guilty, he argues that he took affirmative steps to remove intent as an issue in this case by framing his defense in terms of lack of possession and equal access of others to the drugs in the storage room. But Burgess did not relieve the State of the burden of proving intent merely by focusing his defense on the possession aspect of the crime, and the State was still required to prove both that Burgess had actual or constructive possession of the contraband in the storage closet and that he had the requisite intent to distribute it. Because the prior crime and at least one of the offenses for which Burgess was on trial were identical, the intent required to prove the crimes was necessarily the same. *Harvey v. State*, 344 Ga. App. 761, 769 (2) (a) (i) (811 SE2d 479) (2018). Accordingly, the first prong of the Rule 404 (b) test was satisfied. E.g., *Booth v. State*, 301 Ga. 678, 682-84 (3) (804 SE2d 104) (2017); *Olds*, 299 Ga. at 75 (2); *Gunn v. State*, 342 Ga. App. 615, 620-21 (1) (804 SE2d 118) (2017); *Powell v. State*, 332 Ga. App. 437, 440 (2) (a) (773 SE2d 399) (2015).

Further, the State introduced the jury's verdict and Burgess' conviction for the prior crime, which established that he had been found guilty of that crime beyond a reasonable doubt, and thus the State necessarily met its burden to show that Burgess committed the prior offense under the lesser preponderance of the evidence standard. Accordingly, the third requirement for admissibility was also satisfied. *United States v. Calderon*, 127 F3d 1314, 1332 (IV) (11th Cir. 1997) ("it is elementary that a conviction is sufficient proof that he committed the prior act.").

That leaves the Rule 403 balancing test, under which the trial court may exclude even relevant evidence if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403. In essence, this test balances the need for the evidence against the dangers of its introduction. *State v. Jones*, 297 Ga. at 163 (3). The application of the Rule 403 test is a matter committed principally to the discretion of the trial courts, and "calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." (Citation and punctuation omitted.) *Bradshaw,* 296 Ga. at 657-58 (3). "The major

function of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." (Citation and punctuation omitted.) *Olds*, 299 Ga. At 70 (2), n.7. In reviewing a trial court's determination under this prong, we must be mindful that the exclusion of relevant evidence for this reason "is an extraordinary remedy which should be used only sparingly, since it permits the trial court to exclude concededly probative evidence." (Citation and punctuation omitted.) *Harvey*, 344 Ga. App. at 769-770 (3) (a) (ii). For this reason, "we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." (Citation and punctuation omitted.) *Anglin v. State*, 302 Ga. 333, 337 (3) (806 SE2d 573) (2017).

Burgess argues we cannot assess the similarity between the prior crime and the charged offense since the State did not provide any information concerning the circumstances of the prior offense.[3] However, when extrinsic crimes evidence is introduced to prove defendant acted with a specific criminal intent, the probative

---

[3] The State acknowledges that the introduction of facts surrounding an allegedly similar transaction was required under our prior law, but argues our current law contains no such requirement. See *Stephens v. State*, 261 Ga. 467, 468-69 (6) (405 SE2d 483) (1991).

value of the prior crimes evidence depends in large part on the similarity of the offenses, regardless of whether there are differences in the manner in which defendant committed the crimes. Thus, "evidence that an accused committed an intentional act generally is relevant to show – the evidence, in other words, has some tendency to make more of less probable – that the same defendant committed a similar act with the same sort of intent. . . ." *Olds*, 299 Ga. at 72 (2). And when, as here, the prior and current crimes are identical and the State introduces defendant's prior conviction demonstrating that he was previously convicted of an identical crime requiring the State to prove he acted with an identical specific criminal intent, the similarity in the manner of commission of the crimes may be of lesser importance.[4] See *United States v. Delgado*, 56 F3d 1357, 1366 (III) (B) (11th Cir. 1995) ("[W]hen other crimes evidence goes to intent rather than identity a lesser degree of similarity between the charged crime and the uncharged crime is required."); *United States v. Perrier*, 619 F. App'x 792, 797 (IV) (A) (11th Cir. 2015) ("[A]lthough we do not know the

---

[4] In contrast, "evidence offered under OCGA § 24-4-404 (b) to prove identity must satisfy a particularly stringent analysis, including that the other act is a signature crime' (with) the defendant (using) a modus operandi that is uniquely his." (Citation and punctuation omitted.) *Brooks v. State*, 298 Ga. 722, 725 (2) (783 SE2d 895) (2016). *State v. Plaines*, 345 Ga. App. 205, 209-10 (812 SE2d 571) (2018) (physical precedent only).

15

underlying facts of the extrinsic offense [which was also a possession of a firearm charge], it is clearly similar enough under our precedent to be probative of [defendant's] knowledge in this case."). In both instances, the State was required to prove knowing possession of contraband with intent to distribute. Accordingly, the evidence of prior crime was highly relevant to the issue of Burgess' unlawful possession of cocaine with the intent to distribute or sell it, and the manner of distribution was largely irrelevant.

Additionally, the evidence was important to the State's case, thereby enhancing its probative value. "Generally speaking, the greater the tendency to make the existence of a fact more or less probable, the greater the probative value." *Olds*, 299 Ga. at 76. Although there was some direct evidence that Burgess sold cocaine, much of the evidence introduced to prove Burgess' drug enterprise was circumstantial in nature based on a pattern of activity observed during the Detective's surveillance of Burgess' activities, and whether he was acting with the requisite knowledge and intent was very much at issue. The prior conviction aided the State in proving those elements.

However, we agree with Burgess that temporal remoteness somewhat tempers the probity of the extrinsic evidence. But there is no bright-line rule by which to

determine whether a prior crime is too old to be admissible, and an "appellant bears a heavy burden in demonstrating an abuse of the court's broad discretion in determining if an extrinsic offense is too remote to be probative." (Citation and punctuation omitted.) *United States v. Matthews*, 431 F3d 1296, 1311 (11th Cir. 2005). Here, there was a time span of approximately 12 years between the commission of the first offense in 2002 and the current crime in 2014, and based on Eleventh Circuit precedent in previous cases, we have determined that a similar time span "was not too remote to erode the probative value of the prior conviction." *Gunn*, 342 Ga. App. at 622 (1). See also *Harvey*, 344 Ga. App. at 770 (2) (a) (ii) (upheld admission of 1990 and 1996 prior crimes in case involving crime committed in 2014).

Lastly, we note that any prejudice resulting from admission of evidence of Burgess' prior conviction was mitigated by the limiting instruction the trial court gave when the evidence was introduced and in its final charge to the jury. Id. at 771. Further, because the specific details of the prior crime were not disclosed, the potential for confusion concerning which crime Burgess was on trial for was minimized. See *United States v. Cooper*, 433 F. App'x 875, 877-78 (II) (11th Cir. 2011) (prejudice was greatly minimized because the State admitted the extrinsic crimes evidence in the form of certified convictions instead of live testimony and thus

specific details were not disclosed). Accordingly, Burgess did not meet his burden of showing the trial court abused its discretion by admitting evidence of Burgess' prior conviction under OCGA § 24-4-404 (b).

*Judgment affirmed. Barnes, P. J., and Reese, J., concur.*