**FIRST DIVISION
BARNES, P. J.,
MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**September 9, 2019**

# In the Court of Appeals of Georgia

A19A1422. MOTON v. THE STATE.

MERCIER, Judge.

A jury found David Moton, Jr., guilty of three counts of sale of methamphetamine, one count of possession of marijuana and one count of possession of drug-related objects.[1] Following his conviction and the denial of his motion for new trial, Moton appeals, arguing that the trial court abused its discretion by admitting evidence of a prior act. Finding no error, we affirm.

Prior to trial, the State filed notices that it intended to present evidence of similar transactions or occurrences. Moton filed a motion in limine seeking to

---

[1] The parties do not dispute that the jury trial at issue was the third jury trial regarding the same underlying charges; the first two jury trials resulted in hung juries.

exclude, amongst other things, all evidence of other acts. The trial court held a hearing on the motion, at which the State proffered evidence that during a 2012 traffic stop Moton dropped a bag of cocaine and a bag of marijuana out of his car window and that he was subsequently arrested for possession of a controlled substance. That trial ended in a hung jury. The trial court denied the motion in limine and allowed the evidence to be introduced for the purpose of proving intent.[2]

Viewed in the light most favorable to support the verdict, the evidence presented at trial shows the following. See *Gunn v. State*, 342 Ga. App. 615, 617 (804 SE2d 118) (2017). After receiving anonymous tips regarding the sale of drugs at a house located at a specified address on Cobb Road, the special investigations unit of the Newton County Sheriff's Department worked with a confidential informant to conduct three controlled drug buys. The informant testified that she had previously purchased drugs from Moton, whom she knew as "Half," at both his house at the specified address on Cobb Road and gas stations. The informant agreed to conduct controlled buys from Moton in cooperation with law enforcement officers in exchange for leniency on two drug possession charges that were pending against her.

---

[2] The trial court also allowed the State to introduce evidence of another prior act, which was later introduced into evidence at trial. However, Moton does not claim that the trial court erred in admitting evidence of the other prior act.

The first controlled buy occurred on December 2, 2014, at a gas station where the informant had previously purchased drugs from Moton. Moton and the informant had planned to conduct the purchase at Moton's house, but Moton changed the location to the gas station. Although the police officers were unable to visually observe the exchange of drugs for money, they listened to the sale through audio surveillance, as the informant was wearing a wire transmitter. One police officer was also able to observe the encounter, but not the sale itself, from a distance and saw a black Audi, which the informant said was driven by Moton, pull into the gas station. The informant testified that a man exited the vehicle, while Moton stayed in the vehicle, and the man exchanged methamphetamine for money with the informant. The officer attempted to follow the vehicle but was unable to do so. However, the officer observed the same vehicle in front of Moton's house on a later date.

The second controlled buy occurred on January 29, 2015, at Moton's house. As with the first buy, the police officers did not visually observe the exchange but they did hear what sounded like a drug transaction over the audio surveillance. While the informant was in Moton's house to purchase the methamphetamine, she observed that Moton had a black handgun next to him. Moments after the buy, the police showed the informant a photographic lineup of six individuals, and she identified

3

Moton as the individual who had just sold her the methamphetamine. At trial, the informant also identified Moton as the person who sold her the drugs.

The third controlled buy occurred at Moton's house on February 10, 2015. An undercover police officer drove with the informant to Moton's house, but the officer did not enter the house. The informant wore hidden video and audio surveillance equipment. After completing the third buy, the informant returned to the vehicle and gave the undercover police officer a physical description of Moton and the inside of his house. The State played the audio recordings of the three buys and the video recording of the third buy at trial.

Immediately prior to the three controlled buys, the informant's person and vehicle were searched by police officers. The informant was then given money by the police officers to buy the drugs, she met with Moton and then turned the purchased drugs, which tested positive for methamphetamine, over to the police. The informant and her vehicle were searched immediately following each buy. The searches of the informant's person and vehicle did not reveal any contraband. After the third buy, the informant pled guilty to the two drug possession charges that were pending against her and received six years of probation in exchange for her work as an informant.

4

On February 12, 2015, following the third buy, a search warrant was executed at Moton's house. Officers found drug paraphernalia during the search including digital scales, a grinder, and plastic baggies. They also found an electric bill in Moton's name for the Cobb Road house for the time period surrounding the second buy, a letter in his name, a black handgun on a sofa, a manual for an Audi, rolling papers and a cigarette remnant that tested positive for marijuana.

At trial, the State presented evidence of the other act at issue. Before evidence of that act was presented, the trial court gave a limiting instruction that the evidence could only be used for the purpose of proving the accused's intent and the absence of mistake or accident regarding the three counts of the sale of methamphetamine charged in the indictment. A police officer formerly with the Newton County Sheriff's Department testified that on October 3, 2012, he was on patrol when he observed Moton driving a vehicle and failing to maintain his lane. The officer followed Moton for approximately two miles, during which time Moton seemed to be driving in an erratic manner. The officer activated his emergency equipment and within seconds observed Moton drop two small bags out of his window. Moton pulled over near where the first controlled buy would later occur. The officer approached the car and noticed that Moton "seemed extremely nervous" and that his

5

"legs were shaking uncontrollably." The officer asked Moton what he threw out the window, and Moton claimed that it was lottery tickets. The officer detained Moton with handcuffs and walked back to determine what had been thrown out of the window. The officer saw two bags in the road; one bag contained crack cocaine and the other contained marijuana. Based on the officer's observations, neither bag appeared to have been on the road for a long time. The officer did not find any lottery tickets on the road or in the area. The officer testified that he arrested Moton for drug possession, but he did not believe that Moton had been convicted. The trial court gave a second limiting instruction regarding evidence of other acts during the general jury charge.

Moton argues that the trial court erred by admitting the other act evidence because the evidence was irrelevant to any issue other than his character, and the probative value of the evidence was substantially outweighed by its unfair prejudice in that there was "no credible evidence linking [him] to the drug sales." Relevantly, OCGA § 24-4-404 (b) provides that

> [e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including,

but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

However, even evidence offered for a proper purpose under Rule 404 (b) can be excluded pursuant to OCGA § 24-4-403 ("Rule 403"), "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403. Because Rule 404 (b) and Rule 403 track similar provisions in the Federal Rules of Evidence, "we have adopted the same three-part test used by the Eleventh Circuit Court of Appeals to determine admissibility of other acts evidence under the federal rules to determine the admissibility of evidence of other acts under our own Rules 403 and 404 (b)." *State v. Jones*, 297 Ga. 156, 158 (1) (773 SE2d 170) (2015) (footnote and citations omitted). See also Fed. R. Evid. 403 and Fed. R. Evid. 404 (b).

> Under this test, in order to be admissible, the State must make a showing that: (1) evidence of extrinsic, or other, acts is relevant to an issue other than a defendant's character, see Rule 404 (b); (2) the probative value of the other acts evidence is not substantially outweighed by its unfair prejudice, i.e., the evidence must satisfy the requirements of Rule 403;

7

and (3) there is sufficient proof so that the jury could find that the defendant committed the act in question.[3]

Id. at 158-159 (1) (citations omitted). "A trial court's decision to admit other acts evidence will be overturned only where there is a clear abuse of discretion." Id. at 159 (1) (citations omitted).

Regarding the first prong of the test, we look to OCGA § 24-4-401, which defines "relevant evidence" as evidence that "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See *Kirby v. State*, 304 Ga. 472, 479-480 (4) (819 SE2d 468) (2018). The State had the burden to prove that Moton had the requisite intent to sell the methamphetamine. See OCGA § 16-13-30 (b); OCGA § 16-13-26 (3) (b). Moton placed his intent at issue by pleading not guilty and taking no affirmative steps to relieve the State of its burden to prove intent. See *Kirby*, supra at 480 (4) (a). In order to prove that Moton had the requisite intent to sell, the State had to prove that Moton also had methamphetamine under his control, as the State alleged with his prior drug possession arrest. See generally *Kier*

---

[3] Moton does not claim that the other act evidence failed to satisfy the third prong.

8

*v. State*, 292 Ga. App. 208, 209 (1) (663 SE2d 832) (2008) (in a constructive possession case the State needed to demonstrate beyond a reasonable doubt that the defendant "knowingly had both the power and intention at a given time to exercise control over the [drug.]") (punctuation omitted). Both the charged crimes and the other act required that Moton had the intent to control an illegal substance. Evidence of prior drug activity is highly probative of intent to sell a controlled substance. See *United States. v. Cardenas,* 895 F2d 1338, 1344 (II) (A) (11th Cir. 1990).[4] It is immaterial that the type of drug in the other act evidence is different from the drug at issue. See *United States v. Williams*, 161 Fed. Appx. 842, 845 (III) (B) (11th Cir. 2006).

Furthermore, the prior act of drug possession occurred while Moton was driving a car in the same area where the sale of the methamphetamine during the first buy, from a car Moton was driving, took place. See *Carver v. State*, 248 Ga. App. 718, 719 (2) (548 SE2d 629) (2001) (the trial court did not abuse its discretion in admitting prior drug possession charge due to similarities between the prior and current drug offenses, including that the offenses occurred in the same location). "A

---

[4] We look to the decisions of the federal appellate courts, particularly the Eleventh Circuit, for guidance in construing and applying Rules 403 and 404 (b). *Kirby*, supra at 480 (4) (fn. 5).

9

similarity between the other act and a charged offense will make the other offense highly probative with regard to a defendant's intent in the charged offense." *United States v. Ramirez*, 426 F3d 1344, 1354 (II) (D) (11th Cir. 2005) (citation omitted). There was sufficient similarity between the two incidents to show that the intent for the prior act was relevant to his intent to sell methamphetamine. See *Dent v. State*, 233 Ga. App. 605, 606 (4) (506 SE2d 641) (1998) (trial court did not clearly err in admitting the defendant's prior drug possession offense when it had similarities to the charged offense of possession of cocaine with the intent to distribute, including the fact that the cocaine was "transported by car on the same street"). As such, Moton's intent regarding the prior act was relevant to the charged offenses. See generally *Kirby*, supra.

As to the second prong, the trial court did not abuse its discretion in finding that the probative value of the evidence of Moton's prior drug possession was not substantially outweighed by its unfair prejudice. See OCGA § 24-4-403; *Jones*, supra. "Because the major function of OCGA § 24-4-403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect, the trial court's decision to exclude evidence under Rule 403 is an extraordinary remedy which should be used only sparingly." *Kirby*, supra at 480 (4)

(footnote, citation and punctuation omitted). Moton's possession of drugs in the prior act and the sale in the first buy occurred at the same location within two years of one another. See *Ramirez*, supra. Moreover, the risk of unfair prejudice to Moton was reduced by the court's limiting instruction, which was given both prior to the officer's testimony and during the general jury charge. See id. The trial court, therefore, did not abuse its discretion in concluding that the probative value of the evidence outweighed the risk of undue prejudice to Moton. See generally *Burgess v. State*, 349 Ga. App. 635, 640-644 (3) (824 SE2d 99) (2019).

*Judgment affirmed. Barnes, P. J., and Brown, J., concur.*